IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE



**FILED**

**November 1, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

STATE OF TENNESSEE,
**PUBLICATION**

    Appellee,
**NOVEMBER 1, 1999**

v.

DONALD TERRY MOORE,

    Appellant.

)
)
)
)
)
)
)
)
)
)
)

**FOR**

**FILED:**

DAVIDSON CRIMINAL

HON. ANN LACY JOHNS,
JUDGE

No. 01S01-9812-CR-00220

For the Appellant:
Charles R. Ray
Nashville, Tennessee

Jeffery S. Frensley
Nashville, Tennessee

For the Appellee:
Paul G. Summers
Attorney General & Reporter

Michael E. Moore
Solicitor General

Elizabeth T. Ryan
Assistant Attorney General
Nashville, Tennessee

**OPINION**

AFFIRMED

BARKER, J.

We granted the appeal in this case to address the proper application of Tennessee Rule of Criminal Procedure 14(b)(1), which is used to sever criminal offenses. For the reasons set forth below, we hold that the Court of Criminal Appeals erred in affirming the trial court's denial of appellant's motion to sever one count of child rape based upon a finding that the offense was part of a common scheme or plan. However, we also hold that the error is harmless because the appellant was acquitted on two of the three counts of child rape, and the evidence is entirely sufficient to support the appellant's conviction on the remaining count. Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

## BACKGROUND

On May 24, 1994, a Davidson County grand jury returned an eleven count indictment against Donald Terry Moore alleging, among other things, three separate counts of the rape of his stepdaughter occurring during August and November of 1993. Pursuant to Tennessee Rule of Criminal Procedure 14(b)(1), the appellant moved to have the alleged August offense severed from the remainder of the indictment and tried separately. The trial court denied the motion, finding that both the August and November child rape offenses were parts of a common scheme or plan.

The first two counts of child rape were based upon events occurring during the early morning of November 27, 1993. While his eleven-year-old stepdaughter, L.G.,[1] was sleeping, the appellant entered her bedroom and began choking her. The appellant then took her from her bed and carried her to the master bedroom while still choking her and telling her to be quiet. Later in the bizarre and tragic events of that evening,[2] the appellant took L.G. to the kitchen, and while at the top of the stairs leading to the basement, he allegedly unzipped L.G.'s pants and digitally penetrated

---

[1] It is the policy of this Court not to identify minor children involved in sexual abuse cases by name. Instead, we will identify the minor victim in this case only by her initials.

[2] The sufficiency of the evidence on the other counts of the indictment is not at issue before this Court. Therefore, we will not fully recite these facts except as necessary to discuss the issues raised below related to the State's theory of a common scheme or plan regarding child rape.

2

her.[3]  From the kitchen, the appellant took L.G. to the dining room, ordered her to get down on her knees, and forced her to perform fellatio.

The third count of child rape was based on events allegedly occurring during the previous August.  Sometime during the night of August 8, 1993, the appellant allegedly entered L.G.'s bedroom, placed his hand over her mouth, and told her to be quiet.  The appellant was said to have then removed her shorts and underwear, and while touching her breasts with his hands, he "put his tongue in [her] private."[4]  The State consolidated for trial this August count of child rape with the November offenses under Rule of Criminal Procedure 8(b).

When the appellant moved to sever the August offense from the remainder of the indictment under Rule 14(b)(1), the State argued that the August and November child rape offenses were parts of a common scheme or plan because the methods used revealed a distinctive design and were similar enough to constitute signature crimes.  The trial court denied the appellant's motion to sever.  Following a three day jury trial, the jury convicted the appellant of the count alleging that the appellant forced L.G. to perform fellatio, but it found the appellant not guilty of the remaining two counts of child rape.

The Court of Criminal Appeals affirmed the appellant's conviction and held that joinder of the counts was proper because (1) "the similarities in the offenses [were] sufficient to establish a distinctive design," and (2) the evidence of the first offense was admissible upon the trial of the other offense.  The intermediate court also held that even if joinder of the August and November offenses had been improper, the error was harmless.

## STANDARD OF APPELLATE REVIEW

---

[3] We use the term "allegedly" because the jury found the appellant not guilty on this count of the indictment.

[4] The jury also found the appellant not guilty on this count of the indictment.

3

Since the adoption of the Rules of Criminal Procedure in 1978, there has been considerable debate in the lower courts as to the standard of appellate review from a denial severance under Rule 14(b)(1). To clarify the law in this area, we have held in State v. Shirley, __ S.W.3d __ (Tenn. 1999) (filed simultaneously with the opinion in this case), that a denial of a motion to sever offenses will be reviewed for an abuse of discretion.

## SEVERANCE

In addressing the severance issue in this case, the trial court concluded that the August and November offenses constituted a common scheme or plan because the offenses were evidence of "an ongoing episode . . . [or] a serial situation." Although the Court of Criminal Appeals disagreed with that analysis, it held that both the August and November offenses nevertheless constituted a common scheme or plan because "the similarities in the offenses [were] sufficient to establish a distinctive design." We disagree.

In State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984), this Court stated that "[t]he primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed." Burchfield illustrates that at its most basic level, a question of severance under Rule 14(b)(1) is really a question of evidentiary relevance. When the other offenses in a common scheme or plan are not relevant to a material issue at trial, then a severance should be granted in order to ensure a fair trial by insulating the defendant from evidence of other unrelated offenses. See id. at 287. Otherwise, admission of the other offenses invites the trier of fact to improperly infer that the defendant has a propensity to commit crimes.

To ensure that the defendant receives a fair trial, Tennessee Rule of Evidence 404(b) excludes evidence of "other crimes, wrongs, or acts" committed by the defendant when offered only to show the defendant's propensity to commit those "crimes, wrongs, or acts." However, Rule 404(b) will not bar evidence of other

4

offenses when offered to prove some other issue relevant at trial.  See Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980).

Typically, offenses that are parts of a common scheme or plan are offered by the State to establish the identity of a perpetrator.  See State v. McCary, 922 S.W.2d 511, 514 (Tenn. 1996) (stating that common scheme or plan evidence "is often misunderstood" and is most often used "when the identity of the defendant is in issue" (emphasis omitted)); State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985).  Indeed, identity is usually the only relevant issue supporting admission of other offenses when the theory of the common scheme or plan is grounded upon a signature crime.  See, e.g., State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995).[5]

Although the State argues that the August and November offenses were so similar as to constitute signature crimes, the State seems to have overlooked that the identity of the perpetrator has never been at issue.  Both L.G. and Mrs. Moore identified the appellant as the perpetrator of the November offenses, and at no point has the appellant argued that the November offenses were committed by someone else.  We therefore hold that the August offense would not have been admissible in the trial of the November offenses because it was evidence of other "crimes, wrongs, or acts" and was not relevant for any purpose other than to show the appellant's propensity to commit certain acts.  See Tenn. R. Evid. 404(b).[6]  Consequently, the

---

[5] At least one panel of the Court of Criminal Appeals has noted the growing trend to treat common scheme or plan evidence as relevant merely because it is evidence of a common scheme or plan.  We agree with the analysis in State v. Hallock that

the mere existence of a common scheme or plan is not a proper justification for admitting evidence of other crimes.  Rather, admission of evidence of other crimes which tends to show a common scheme or plan is proper to show identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue.  Unless expressly tied to a relevant issue, evidence of a common scheme or plan can only serve to encourage the jury to conclude that since the defendant committed the other crime, he also committed the crime charged.

See 875 S.W.2d at 285, 292 (Tenn. Crim. App. 1993).  Although crimes having a distinctive design are usually only relevant to establish the identity of the offender, we do not necessarily agree with the statement of the Hoyt court that crimes having a distinctive design "must be probative of the defendant's identity."  See 928 S.W.2d at 943.

[6] Further, the State does not offer any other relevant ground supporting admission of the August offense.  The State simply argues that "because the offenses against the victim constituted a common scheme or plan, evidence of each offense addressed an issue relevant to the other offense and was therefore admissible in the trial of the other."  Brief for Appellee at 15.  This conclusion is misplaced; a proper finding of a common scheme or plan does not a fortiori compel the conclusion that all the offenses in the common scheme or plan are admissible.  Each offense alleged to be part of the common scheme or plan must be relevant to some specific issue at trial, such as identity.

trial court erred in not granting the appellant's motion to sever the August offense from the remainder of the indictment.

Even if the identity of the offender were a material issue at trial, we are not convinced that the August and November offenses were so similar as to allow an inference of identity from the presence of a common scheme or plan. According to Tennessee Rule of Criminal Procedure 14(b)(1), a defendant is entitled to a severance of multiple offenses as a matter of right "unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others."[7] In Tennessee, there are three categories of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. See generally Neil P. Cohen et al., Tennessee Law of Evidence § 404.11, at 180 (3d ed. 1995).

In this case, the Court of Criminal Appeals relied upon the distinctive design of the August and November offenses to establish that they were parts of a common scheme or plan. In doing so, the intermediate court expressly rejected the categories of "larger conspiracy" or "same transaction." State v. Moore, No. 01C01-9702-CR-00061, slip op. at 10 (Tenn. Crim. App. April 9, 1998). The State concedes, in this Court, that the only possible ground for a common scheme or plan in this case is that of distinctive design or signature crime. See Brief for Appellee at 11. While we agree that the August and November offenses are certainly not part of the same transaction or larger conspiracy, we disagree that the offenses are parts of a distinctive design or constitute signature crimes.

---

[7] Although the Rules of Criminal Procedure do not define when certain offenses may constitute a "common scheme or plan" such that permissive joinder of offenses is appropriate, the phrase "common scheme or plan" has long been used in the law of evidence. There is no evidence that the Rules intended a deviation from the evidentiary meaning of the phrase, nor does it otherwise appear that the Rules even contemplate a different meaning. Therefore, we are persuaded that the Rules intend that a common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes. Accord State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995); State v. Hallock, 875 S.W.2d 285, 289 (Tenn. Crim. App. 1993); State v. Peacock, 638 S.W.2d 837, 839-40 (Tenn. Crim. App. 1982).

Before multiple offenses may be said to reveal a distinctive design, and therefore give rise to an inference of identity, the "modus operandi employed must be so unique and distinctive as to be like a signature." State v. Carter, 714 S.W.2d 241, 245 (Tenn. 1986). While this is not to say that the offenses must be identical in every respect, Bunch v. State, 605 S.W.2d 227, 231 (Tenn. 1980), the methods used in committing the offenses must have "such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons." See Harris v. State, 189 Tenn. 635, 644, 227 S.W.2d 8, 11 (Tenn. 1950). In other words, "the *modus operandi* of the other crime and of the crime on trial must be substantially identical *and must be so unique* that proof that the defendant committed the other offense fairly tends to establish that he also committed the offense with which he is charged." Bunch, 605 S.W.2d at 230 (emphasis in original).

It is important to emphasize that the "test [for finding a common scheme or plan] is not whether there was evidence that a defendant committed both crimes, but whether there was *a unique method* used in committing the crimes." Young v. State, 566 S.W.2d 895, 898 (Tenn. Crim. App. 1978) (emphasis added). Although some cases have suggested that multiple offenses which are "strikingly similar" may constitute parts of a common scheme or plan, see White v. State, 533 S.W.2d 735, 741 (Tenn. Crim. App. 1975), a proper analysis of this issue must be accompanied by more than a mere weighing of the similarities and differences of the various offenses. A common scheme or plan is not found merely because the similarities of the offenses outweigh any differences.[8] Rather, the trial court must find that a distinct design or unique method was used in committing the offenses before an inference of identity may properly arise.

In our review of the record in this case, we conclude that the offenses were not committed with "such unusual particularities" as to indicate the presence of a distinct

---

[8] The Court of Criminal Appeals used this standard of weighing similarities and differences in affirming the denial of severance. The State's brief also concludes that this approach is correct. See Brief for Appellee at 12-13. However, we believe that a proper analysis of "distinctive design" entails more than merely declaring that the "similarities far outweigh the differences," and trial courts should carefully examine whether offenses alleged to constitute signature crimes actually show the operation of a distinct modus operandi.

7

modus operandi, nor were the offenses so "strikingly" similar that they may be regarded as the stamp or signature of the appellant. The methods used by the appellant in the alleged August rape differed substantially from the methods he used the following November. In fact, all of the events occurring on November 27, 1993 are so extraordinary and utterly disgusting that no pattern can be discerned that would logically or reasonably coincide with the earlier August offense.[9]

The "mere fact that a defendant has committed a series of . . . crimes does not mean that they are part of a common scheme or plan although the offenses may be of the 'same or similar character.'" State v. Peacock, 638 S.W.2d 837, 840 (Tenn. Crim. App. 1982). The modus operandi in this case, if there is one at all, is not so unique and distinctive as to allow one to conclude that if the appellant committed the alleged August offense, then he also must have committed the November offenses as well. Therefore, the lower courts erred in finding that the August and November offenses were parts of a common scheme or plan based on a distinctive design.

Because the State was unable to show a material issue at trial to which evidence of the August offense would be relevant, we hold that the trial court abused its discretion in denying the appellant's motion to sever the offenses. A holding of abuse of discretion reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case. See, e.g., State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997); Ballard v. Herzke, 924 S.W.2d 652, 661 (Tenn. 1996). In considering whether

---

[9] For example, after a night of drinking and playing cards on November 26, 1993, the appellant entered L.G.'s bedroom, took her from her bed, and carried her to the master bedroom while choking her and telling her to be quiet. Ms. Moore, who was sleeping on the living room couch, was awakened by a noise coming from the master bedroom, and she went to the bedroom to investigate. When she entered the bedroom, the appellant hit her in the forehead with a hammer knocking her to the floor. When Ms. Moore regained consciousness, the appellant forced her and L.G. into the basement of the house, while continuing to sporadically hit Ms. Moore with the hammer. Once in the basement, the appellant used an electrical cord to tie Ms. Moore to a pole. The appellant then took L.G. upstairs to the kitchen, and while at the top of the stairs leading to the basement, the appellant allegedly unzipped L.G.'s pants and penetrated her digitally. The appellant next took L.G. to the dining room, ordered her to get down on her knees, and forced her to perform fellatio. Later in the evening, the appellant forced both Ms. Moore and L.G. into a corner in the dining room where he urinated on them and poured beer in their hair. While he was doing this, the appellant was muttering to himself that the whole affair was "crazy."

By way of contrast, none of these bizarre events were alleged to have occurred during the previous August. The appellant did not use a hammer or an electrical cord to facilitate the alleged August rape of his stepdaughter. Further, the appellant did not urinate on his stepdaughter after he allegedly raped her in August. If the State alleged that these peculiar events, or something substantially similar to them, had also occurred the previous August, then a finding of a signature crime may have been appropriate.

evidence of the August offense was admissible in the trial of the November offenses, the decision of the trial court was contrary to established legal principles because the identity of the offender was never at issue and the evidence was not otherwise relevant. Further, the trial court's conclusion that the August and November offenses were parts of a common scheme or plan was not supported by proper logic and reason because the August offense was not so unusual or distinctive as to constitute a signature crime, especially when compared to the bizarre circumstances surrounding the November offenses.

**HARMLESS ERROR**

Since we have found that it was error not to sever the alleged August offense from the remainder of the indictment, we must now examine the record as a whole to decide whether that error more probably than not affected the judgment. See Tenn. R. Crim. P. 52(a); see also Tenn. R. App. P. 36(b). Because the question of whether to grant a severance under Tennessee Rule of Criminal Procedure 14(b)(1) is primarily an evidentiary question, see Burchfield, 664 S.W.2d at 286, the effect of a denial of that right is weighed by the same standard as other non-constitutional evidentiary errors: the defendant must show that the error probably affected the judgment before reversal is appropriate. Cf. State v. Neal, 810 S.W.2d 131, 138 (Tenn. 1991). We hold that the appellant in this case has failed to meet that burden, and therefore, the denial of severance was harmless error.

The appellant contends that through joinder of the offenses, "the jury got the opportunity to consider the [appellant's] propensity to commit sex crimes, and even though he was acquitted on [the August offense], it prejudiced him in Count [two] and brought about his conviction on that count." It is undoubtedly true that under some circumstances there is a danger that a jury may use evidence of other similar acts to conclude that a defendant has a propensity to commit certain types of crimes. This is the very rationale behind Tennessee Rule of Evidence 404(b).

9

However, it is equally true that "the line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict . . . ." Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979). In this case, the testimony and physical evidence are more than sufficient to allow a rational jury to conclude beyond a reasonable doubt that the appellant forced his stepdaughter to perform fellatio.[10] We are further persuaded that the jury did not consider the August offense as propensity evidence because the jury not only acquitted the appellant on this count, but it also acquitted him of one of the other November offenses. Therefore, because the evidence presented was more than sufficient for conviction and because the appellant was acquitted of the August offense and one of the November offenses, we find the error did not affect the judgment and was harmless.

---

[10] L.G. testified herself to the events on November 27, and this testimony was corroborated by two other witnesses. Further, mouth and throat swabs were taken from L.G. a short time after the events of November 27, and these samples confirmed that semen had been present in her mouth.

10

**CONCLUSION**

To summarize, we hold that the trial court erred in not severing count eleven from the remainder of the indictment pursuant to Tennessee Rule of Criminal Procedure 14(b)(1). Not only did the method used in the alleged August offense fail to reveal a common scheme or plan when viewed with the remaining counts of the indictment, but the August offense would also have been inadmissible upon the trial of the other counts. However, because the jury acquitted the appellant of two of the three counts of child rape and because the evidence supporting the remaining count is more than sufficient to support a verdict of guilty beyond a reasonable doubt, we hold that the error is harmless. Therefore, the appellant's conviction and sentence is affirmed.

Costs of this appeal are assessed to the appellant, Donald Terry Moore, for which execution shall issue if necessary.

_____
William M. Barker, Justice

CONCUR:

Anderson, C.J.,
Drowota, Birch, Holder, J.J.