IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2007

**STATE OF TENNESSEE v. ELMER HARRIS**

**Appeal from the Criminal Court for Shelby County**
**No. 05-1714,15     Chris Craft, Judge**

**No. W2006-02516-CCA-R3-CD  - Filed September 27, 2007**

The Appellant, Elmer Harris, appeals his convictions in the Shelby County Criminal Court for aggravated robbery, criminal attempt to commit aggravated robbery, and aggravated assault.  The charges stemmed from incidents occurring at two different Memphis convenience stores on July 4 and July 10, 2004.  Prior to trial, the State moved that the two separate indictments be consolidated for trial, and the trial court granted the motion for consolidation.  On appeal, Harris presents two issues for our review: (1) whether the trial court erred in consolidating the indictments for trial; and (2) whether the evidence presented at trial was sufficient to support his convictions.  We affirm Harris' convictions; however, we conclude that double jeopardy protections require that the convictions for attempted aggravated robbery and aggravated assault be merged.  Accordingly, we remand to the trial court for purposes of merger and for entry of corrected judgments of conviction.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed;**
**Remanded for Purposes of Merger**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender; Tony N. Brayton, Assistant Public Defender (on appeal); and Diane Thackery, Assistant Public Defender (at trial), Memphis, Tennessee, for the Appellant, Elmer Harris.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

At approximately 3:30 a.m. on July 4, 2004, Gregory Martin was working as a clerk at a Mapco convenience store in Memphis when a man entered the store, placed a one dollar bill on the counter, and asked for a single "Black and Mild" cigar. When Martin opened the drawer of the cash register, the man produced a chrome handgun, pointed it at Martin, told Martin to step into the back of the store, and instructed him "not to be a hero." The man then reached into the cash register drawer and removed between sixty and seventy dollars. Martin stepped into a back room, and the man proceeded to leave the store. Martin called the police and then called the store's security team. When the police arrived, Martin described the suspect to them as a "black man, medium to light skin complexion, about six feet [tall], wearing a black T-shirt with white writing, [and] khaki to yellow pants." The convenience store was also equipped with a surveillance camera, which was operating at the time of the crime. On September 5, 2004, after viewing a photographic lineup shown to him by the police, Martin identified the Appellant as the perpetrator. At a preliminary hearing in November of 2004, Martin again identified the Appellant.

Sometime after 1:00 a.m. on July 10, 2004, Melissa Wright, a clerk at a Circle K convenience store, and a coworker were in a back office of the store when they noticed on the store's surveillance camera a man entering the store. Wright went out to help the man while her coworker remained in the back office. Wright asked the man if she could help him, and he asked for one "Black and Mild" cigar. Wright told the man the cigar would cost seventy-five cents, and he handed her a one dollar bill. As Wright closed the cash register drawer and prepared to give him the cigar and his change, the man said "look at this" and pointed a chrome handgun at her face. Wright then turned and ran into the back office, and her coworker pushed the store's "panic button" to summon the police. Wright later identified the Appellant as the perpetrator from a photographic lineup. At trial, Wright testified that the robber was wearing a navy blue t-shirt that "had a T slash . . . MAC, M-A-C on the shirt."

On March 10, 2005, a Shelby County grand jury returned two separate indictments against the Appellant. One indictment charged the Appellant with aggravated robbery based upon the incident that occurred at the Mapco convenience store on July 4, 2004. The other indictment charged the Appellant with criminal attempted aggravated robbery and aggravated assault based upon the events occurring at the Circle K store on July 10, 2004. After a pre-trial hearing, the trial court granted the State's motion to consolidate the indictments for trial.

Following an August 14, 2006 trial, the jury returned a verdict finding the Appellant guilty of aggravated assault, attempted aggravated robbery, and aggravated robbery. After reading the verdict, the trial court affirmed the verdict as the thirteenth juror. A sentencing hearing was held on September 28, 2006, after which the trial court sentenced the Appellant, as a Range III, persistent offender, to concurrent thirteen-year sentences for the aggravated assault and criminal attempted aggravated robbery convictions and to sixteen years in confinement for the aggravated robbery. The aggravated robbery sentence was ordered to run consecutively to the other sentences, resulting in an effective sentence of twenty-nine years in confinement. The Appellant filed a motion for new trial, which was denied by the trial court.

**Analysis**

## I. Consolidation of Indictments

The Appellant first contends that the trial court erred in granting the State's motion to consolidate the separate indictments for trial. Specifically, he argues that the trial court abused its discretion when it concluded that a common scheme or plan existed or that the method used in perpetrating the two separate incidents was so unique and distinctive as to be like a signature. The Appellant maintains that the modus operandi of these offenses was not so unique and distinctive that anyone could conclude that a single perpetrator must have carried out the crimes. The Appellant further submits, in rather conclusory terms, that evidence of one offense would not have been admissible in the trial of the other if they had been severed. Finally, the Appellant alleges that the trial court's consolidation was not harmless error, because the evidence against him was based primarily on eyewitness identification and that "[n]o physical evidence, such as fingerprints, linked the [A]ppellant to either of these crimes."

Conversely, the State argues that the trial court appropriately exercised its discretion in consolidating the offenses for trial, because the proof established a "signature" crime for the purposes of finding a common scheme or plan. The State directs our attention to several similarities in the separate offenses underlying the indictments, such as the perpetrator of both crimes wearing the same or a similar t-shirt adorned with the words "T-Mac," his asking both store employees for a particular brand of cigar, and his production of a chrome pistol when the cash register drawer was opened to make change. The State further argues that even if this court finds the consolidation to be an abuse of discretion, it was harmless error, because "both store clerks remained unwavering in their identification of the [Appellant] from the photo lineups."

We review decisions concerning permissive joinder and severance of offenses pursuant to Tenn. R. Crim. P. 8(b) and 14(b)(1) for an abuse of discretion. *State v. Toliver*, 117 S.W.3d 216, 231 (Tenn. 2003); *Spicer v. State*, 12 S.W.3d 438, 442 (Tenn. 2000). A trial court's decision to consolidate or sever offenses will not be reversed unless the court applied an incorrect legal standard or reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Spicer*, 12 S.W.3d at 443. A motion to consolidate or sever offenses is typically a pre-trial motion, and, consequently, evidence and arguments tending to establish or negate the propriety of consolidation must be presented to the trial court in the hearing on the motion. *Id.* at 445.

If the defendant objects to consolidation or moves to sever the offenses for trial, then Tenn. R. Crim. P. 14(b)(1) places the burden on the prosecution to show that the offenses are part of a common scheme or plan and that the evidence of one crime would be admissible in the trial of the other. *State v. Burchfield*, 664 S.W.2d 284, 286 (Tenn. 1984). Essentially, "any question as to whether offenses should be tried separately pursuant to Rule 14(b)(1) is 'really a question of evidentiary relevance.'" *Spicer*, 12 S.W.3d at 445 (quoting *State v. Moore*, 6 S.W.3d 235, 239 (Tenn. 1999)). Evidence of other offenses that tends to show a defendant's character or propensity is generally not admissible, as it invites the fact-finder to infer guilt from propensity. *State v. Denton*,

149 S.W.3d 1, 13 (Tenn. 2004). However, this evidence may be admissible for other purposes such as to prove motive, intent, identity, the absence of mistake or accident, or the existence of a larger continuing plan. *Id.* (citing *Toliver*, 117 S.W.3d at 230). Before consolidation is proper, the trial court must conclude from the evidence and arguments presented at the hearing that: (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of one offense is relevant to some material issue in the trial of the other offense; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant. *See* Tenn. R. Crim. P. 14(b)(1); Tenn. R. Evid. 404(b).

Regarding the first part of the test under Tenn. R. Crim. P. 14(b), there are three types of common plan or scheme evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. *Denton*, 149 S.W.3d at 13 (citing *State v. Shirley*, 6 S.W.3d 243, 248 (Tenn. 1999)). The test for finding "signature" crimes is "not whether there was evidence that a defendant committed both crimes, but whether there was a *unique method* used in committing the crimes." *Id.* at 14 (quoting *Moore*, 6 S.W.3d at 241) (emphasis in original). Under such circumstances, "the modus operandi employed must be so unique and distinctive as to be like a signature." *Id.* (quoting *Moore*, 6 S.W.3d at 240). Our supreme court has stated:

> Typically, offenses that are part of a common scheme or plan are offered by the State to establish the identity of the perpetrator. Indeed, identity is usually the only relevant issue supporting admission of other offenses when the theory of the common scheme or plan is grounded upon a signature crime.

*Moore*, 6 S.W.3d at 239 (citations omitted). A common scheme or plan is not found merely because the similarities of the offenses outweigh any differences. *Id.* at 241. Rather, the trial court must find that a distinct design or unique method was used in committing the offenses before an inference of identity may properly arise. *Id.*

In this case, the trial court found that the State satisfied its burden in establishing that the separate offenses were part of a common scheme or plan and that evidence of one of the offenses would have been admissible in a trial of the other on the basis of identity. At a pretrial hearing on the State's motion to consolidate the indictments for a single trial, the Appellant opposed the motion, requesting separate jury trials on each indictment. In support of its position, the State noted the similarity of the crimes at issue, specifically the perpetrator's request for a single "Black and Mild" cigar, production of a one dollar bill, and the display of a gun when each of the store employees opened the cash register drawer. The State also provided the trial court with a copy of the surveillance video from the Circle K incident, and it further argued that both Martin and Wright had identified the Appellant as the perpetrator from a photographic lineup. The State also argued that both Martin and Wright had described the perpetrator as wearing a dark t-shirt with the words "T-Mac" printed on its front. At the conclusion of the hearing, the trial court granted the State's motion to consolidate the indictments, stating:

-4-

Well, you know, obviously I wouldn't want to try the case and have the two victims testify if they were consolidated to different things happening, different T-shirts, but if that's apparently the way it is I don't find the probative value of the ID on each case is outweighed by the danger of unfair prejudice.

I don't see that – I mean, it could be it's an identification, it could be that some completely different man committed both of these, but if it's apparent to the jury that they were convicted – they were committed by the same person in the similarity with the same T-shirt six days apart, the same M.O. I would think that they could consider that, that I think that those two ID's would be fairly probative.

So what I'm going to do is I'm going to grant the Motion to Consolidate but if I hear the proof in the case and it appears that it comes out different then I'm going to declare a mistrial and then we'll have to try another one of these cases by themselves.

After a thorough review of the entire record, we find the Appellant's argument on this issue to be unpersuasive. The crimes, which were both committed within a one-week period, involved a perpetrator wearing a t-shirt that was described in nearly identical terms by both store employees at trial. In both instances, the perpetrator approached the store employee, asked specifically for a "Black & Mild" cigar, tendered a one dollar bill, and brandished a chrome handgun when the cash register was opened. We believe that these similarities established a distinct design or unique method in committing the offenses sufficient to constitute a "signature" modus operandi.

Furthermore, we conclude that the trial court did not abuse its discretion in finding that the State satisfied its burden in establishing that the evidence of one offense would be admissible in a trial of the other. In its most basic sense, any question as to whether offenses should be tried separately pursuant to Rule 14(b)(1) is really a question of evidentiary relevance. *Moore*, 6 S.W.3d at 239 (citing *State v. Burchfield*, 664 S.W.2d 284, 286 (Tenn. 1984)). In this case, identity was clearly a material issue, and evidence of the unique method by which the crimes were carried out was relevant for the purposes of showing identity. We further conclude that the probative value of this evidence was not outweighed by the prejudicial effect that admission of the evidence would have had on the Appellant. Consequently, we find this issue to be without merit.

## II. Sufficiency of the Evidence

The Appellant also contends that the evidence at trial was insufficient to support his convictions. He argues that his convictions "are primarily based upon eyewitness identifications and video surveillance tapes" and that this court "must weigh and evaluate the evidence at least to the extent necessary to conduct the kind of review" mandated by the United States Supreme Court in *Jackson v. Virginia*.

The Appellant was convicted of one count of aggravated robbery, one count of criminal attempt to commit aggravated robbery, and one count of aggravated assault. Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear. T.C.A. § 39-13-401 (2003). Aggravated robbery is robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon, or where the victim suffers serious bodily injury. T.C.A. § 39-13-402 (2003). The offense of criminal attempt, as applicable to the present case, is committed by a person "who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part . . . ." T.C.A. § 39-12-101(a)(2) (2003). As relevant to this case, under T.C.A. § 39-13-101(a)(2) (2003), a person commits assault when he or she "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]" Finally, "[a] person commits aggravated assault who: (1) [i]ntentionally or knowingly commits an assault as defined in § 39-13-101 " and "[u]ses or displays a weapon . . . ." T.C.A. § 39-13-102(a)(1)(B) (2003).

Due process requires that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof, which is defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In our review of the issue of sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789 (emphasis in original); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court does not re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). Nor may this court substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *Id*. (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *Liakas v. State*, 286 S.W.2d 856, 859 (1956)).

We conclude that the Appellant's argument of "insufficient" identification is misplaced. It is well-established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1994). The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

In this case, both convenience store employees testified that their stores were fully illuminated on the nights in question. Martin testified that, at the time of the Mapco robbery, the perpetrator stood "no more than two or three feet" from him, and Wright testified that the perpetrator was only "a couple of feet from [her] face." Both of these witnesses subsequently identified the Appellant as the perpetrator from a photographic lineup. Martin again identified the Appellant from a lineup held at a preliminary hearing. Furthermore, at trial the jury was shown the surveillance videotapes from the nights of these crimes, from both the Mapco and Circle K convenience stores. This court will not substitute its inferences for those drawn by the jury as the finder of fact. We conclude that the evidence was sufficient for any rational trier of fact to have found the essential elements of the crimes beyond a reasonable doubt. Therefore, the Appellant's argument on this issue is without merit.

Notwithstanding the fact that the Appellant has neglected to raise the issue for our review on appeal, we are constrained to note that the separate convictions for criminal attempt to commit aggravated robbery and aggravated assault constitute plain error on the face of the record. These two counts corresponded to criminal actions taken by the Appellant against Melissa Wright at the Circle K convenience store on July 10, 2004. The Appellant's multiple convictions arising out of this single course of conduct involving a single victim raises the constitutional issue of double jeopardy. Therefore, resolution of this issue is necessary to do substantial justice and to prevent injury to the interests of the public. Thus, consideration of this issue is appropriate under Tenn. R. App. P. 13(b) criteria.

Count One of the indictment charged the Appellant with criminal attempt to commit aggravated robbery "by putting [the victim] in fear, by use of a deadly weapon or by display of any article used or fashioned to lead [the victim] to reasonably believe the article to be a deadly weapon." Count Two of this indictment, charging aggravated assault, alleged that the Appellant "did unlawfully and knowingly commit an assault on [the victim] and by use of a deadly weapon, cause the said [victim] to reasonably fear imminent bodily injury . . . ."

For purposes of our analysis of the double jeopardy issue, the question is whether the convictions for criminal attempt to commit aggravated robbery in Count One and aggravated assault in Count Two may stand as separate and distinguishable offenses. The United States and Tennessee Constitutions protect the accused from being twice placed in jeopardy for the same offense. U.S. CONST., amend. V; TENN. CONST. Art. I, Sec. 10. Our supreme court has stated, on numerous occasions, that three fundamental principles underlie the constitutional protections against double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. *See, e.g.*, *State v. Lewis*, 958 S.W.2d 736, 738 (Tenn. 1997); *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996); *see also Cable v. Clemmons*, 36 S.W.3d 39, 42 (Tenn. 2001). In this case, the judgments of conviction for the counts of criminal attempt to commit aggravated robbery and aggravated assault are appropriately analyzed under the third category of double jeopardy cases,

specifically protection against multiple punishments for the same offense. In *Denton*, our supreme court established the analytical framework for determining whether a defendant has received multiple punishments for the same offense. *Denton*, 938 S.W.2d at 379-81. In Tennessee, whether two offenses are the "same" for double jeopardy purposes depends upon a "close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances." *Id.* at 379 (quoting *State v. Black*, 524 S.W.2d 913, 919 (Tenn. 1975)).

Under both the federal and state double jeopardy provisions, a defendant cannot be convicted of two offenses if one is a lesser included offense of the other. *State v. Green*, 947 S.W.2d 186, 189 (Tenn. Crim. App. 1997) (citing *Brown v. Ohio*, 432 U.S. 161, 97 S. Ct. 2221 (1977); *Black*, 524 S.W.2d at 915). The current test under the federal constitution for determining whether an offense is a "lesser included" of another is "whether each [statutory] provision [setting forth the offense] requires proof of an additional fact which the other does not." *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932)). Aggravated assault by means of the use or display of a weapon is a lesser included offense of criminal attempt to commit aggravated robbery. *State v. Jonathan Armstrong*, No. 02C01-9312-CC-00271 (Tenn. Crim. App. at Jackson, Dec. 30, 1994); *see also State v. Jason C. Carter*, No. M1998-00798-CCA-R3-CD (Tenn. Crim. App. at Nashville, Apr. 27, 2000), *perm. app. denied*, (Tenn. Nov. 20, 2000); *accord State v. Marcus Johnson*, No. W2002-00987-CCA-R3-CD (Tenn. Crim. App. at Jackson, Sept. 4, 2003), *perm. app. denied*, (Tenn. Jan. 26, 2004). In the instant case, it is apparent from the record that these two counts arose out of and were part of one criminal episode. The intent of the Appellant was to rob the victim, and the aggravated assault of the victim by use of a handgun was in furtherance of that intent and was necessarily involved in the attempted robbery. An essential element of aggravated robbery is the theft from another by violence or putting that person in fear. The Appellant's threatening display of the handgun was an integral part of the attempted robbery that occurred at the Circle K convenience store on July 10, 2004. Thus, principles of double jeopardy preclude both convictions standing.

"In the circumstance, in which two guilty verdicts are returned as to alternative charges, the guilty verdict on the greater charge stands and the guilty verdict on the lesser charge merges[] into the greater charge." *State v. Banes*, 874 S.W.2d 73, 81 (Tenn. Crim. App. 1993) (citing *State v. Davis*, 613 S.W.2d 218 (Tenn. 1981)) (internal footnote omitted). The application of the concept of merger in this case, therefore, should have resulted in the lesser conviction, aggravated assault, merging into the greater offense of attempted aggravated robbery. We, therefore, remand the case in order for the trial court to merge these two convictions. The trial court is further instructed to enter a corrected judgment of conviction to accurately reflect this merger, with copies of said judgment to be afforded to the Department of Correction.

**CONCLUSION**

Based upon the foregoing, the Appellant's convictions for aggravated robbery, attempted aggravated robbery, and aggravated assault are affirmed. Furthermore, the case is remanded for merger of the convictions for aggravated assault and attempted aggravated robbery into a single conviction of attempted aggravated robbery with entry of corrected judgment forms.

_____
DAVID G. HAYES, JUDGE