IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2019

## STATE OF TENNESSEE v. JERMAINE ANTWOINE CRAYTON

**Appeal from the Criminal Court for Hamilton County**
**No. 295547      Tom Greenholtz, Judge**

_____

### No. E2018-01767-CCA-R3-CD

_____

The Defendant, Jermaine Antwoine Crayton, pleaded guilty to several drug offenses in 2015 and to another drug offense in 2016. The trial court placed the Defendant on probation, and the Defendant's probation officer filed an affidavit alleging that he violated his probation. After a hearing, the trial court revoked the Defendant's probation and ordered that he serve the balance of his sentence in confinement. On appeal the Defendant contends that the trial court erred when it ordered that he serve the balance of his sentence in confinement. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT H. MONTGOMERY, JR., JJ., joined.

Charles P. Dupree, Chattanooga, Tennessee, for the appellant Jermaine Antwoine Crayton.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; M. Neal Pinkston, District Attorney General; Jason Demastus, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant's convictions for several drug offenses. On April 9, 2015, a Hamilton County grand jury indicted the Defendant for possession of cocaine for resale, possession of marijuana, possession of drug paraphernalia, and, under a separate docket number, aggravated assault. On February 9, 2016, the Defendant pleaded guilty to possession of cocaine, a Class C felony, misdemeanor possession of marijuana, misdemeanor possession of drug paraphernalia, and misdemeanor assault.

The parties agreed to an effective sentence of four years, with eleven months and twenty nine days of incarceration followed by probation. The trial court ordered that the Defendant have monthly drug screens, complete a drug and alcohol assessment, and comply with any recommended treatment.

On September 14, 2016, the Defendant's probation officer filed a probation violation report alleging that the Defendant had violated his probation by absconding from supervision. Her report indicated that the Defendant had violated his probation in the following ways:

Rule #4, in that, this offender has failed to provide documentation to his Officer that he is working at a lawful occupation to the best of his ability.

Rule #5, in that, this offender failed to inform his Officer of his proper residence and gave a false address of a family member who advises she has no contact with this offender. This offender has absconded.

Rule #6, in that, the offender has failed to allow his Officer to visit his home, carry out all lawful instructions his Officer gives, and fails to report as directed.

Rule #8, in that this offender has failed to refrain from using illegal drugs when he tested positive for cocaine, marijuana, and morphine on August 15th, 2016 and signed the drug admittance statement.

Rule #9, in that this offender has failed to pay all required fees to the Supervision and Criminal Injuries Fund in the amount of $45.00.

The violation report went on to state that the Defendant reported to his first appointment on August 15, 2016, where he tested positive for drugs and signed a drug admittance statement. His probation officer told him that he must complete an alcohol and drug evaluation and refrain from drug use. The officer told him to report back on August 22, 2016, and the Defendant failed to report. On August 31, 2016, the probation officer went to the Defendant's listed address, which belonged to his aunt, and she said the aunt said that the Defendant did not live with her and that she did not communicate with the Defendant. The Defendant's aunt was aware that the Defendant had used her address for probation purposes.

The trial court issued a capias, and the Defendant was arrested. At a probation revocation hearing, the parties presented the following evidence: The Defendant's probation officer, Christina Barnes, testified that upon the Defendant's release from

custody he went through the probation supervision orientation process. At his appointment on August 15, 2016, he tested positive for cocaine, marijuana, and morphine, and he signed an admission statement to having used those drugs. Ms. Barnes gave the Defendant another appointment on August 22, 2016, and he did not report. The probation officer unsuccessfully attempted to contact the Defendant both by telephone and by visiting his listed address. She had not had any further contact with the Defendant since that date.

During cross-examination, Ms. Barnes agreed that the Defendant had attended probation appointments on August 3 and 10.

Janice Hammonds testified that the address that the Defendant had given to his probation officer belonged to her mother. Ms. Hammonds said that she also resided at that address and had given the Defendant "the okay to come and stay with" her and her mother. Ms. Hammonds said that her mother was unaware that she had given the Defendant permission, noting that her mother was 88 or 89 years old. The Defendant stayed with them for a while, but he needed a residence where he could stay with his children also, so he had to move.

Letorius Simmons testified that she and the Defendant were engaged to be married and had been dating for more than three years. Ms. Simmons testified that, if the Defendant were released from custody, he would reside with her. Ms. Simmons said that she worked at both Erlanger East and at a Days Inn and she could get the Defendant a job with either of her employers. She said that the Defendant's children were in foster care, and she and the Defendant were attempting to obtain custody of his children.

Ms. Simmons said that the Defendant had failed to report because he was working diligently on attempting to get his children situated. Their life circumstances at that time were in "turmoil." Ms. Simmons agreed that she became aware that the Defendant had not been reporting for probation in the first part of 2017, and the Defendant was not arrested until almost eighteen months later. She maintained that he did not report because he was trying to take care of his sons. Ms. Simmons said that the Defendant never used drugs while the two were together.

The Defendant testified, and he agreed that he was guilty of absconding from his probation. He said that he remained in Chattanooga and did not receive any new offenses but that he did not report to his probation officer as required. The Defendant admitted that he had made the wrong decision. The Defendant explained that, after he failed his drug test, he was told that his probation was automatically violated because he was on probation for drug offenses. He became stressed, in part because of the living situation of his children at the time and the fact that their mother was not acting appropriately to care

3

for them.

The Defendant said that, upon his release, he went to live with his aunt. She got into a dispute with the Defendant's mother, which resulted in her asking the Defendant to leave. He said that she likely told officers that the Defendant never stayed with her because of her advanced age. The Defendant acknowledged that his decision not to keep his probation appointments was his own responsibility.

During cross-examination, the Defendant said that he had been on probation "a few times" in the past. He said that he had never before absconded from probation and that it was the "wrong decision." The Defendant said that he had filed for custody of his children and needed to get his family back together.

Upon questioning from the trial court, the Defendant agreed that he was gone from probation for an extended period of time. He agreed that he had attended school functions and cared for his children but said that he did not call his probation officer because he was "scared."

The Defendant's attorney agreed that the Defendant had violated his probation, but he asked that he be returned to probation. The trial court made extensive findings. It found that the Defendant had violated his probation by using marijuana and cocaine while on probation and by failing to report. It further found that the Defendant should serve the balance of his sentence in confinement because the violations were serious, in that reporting is the most basic requirement, and involved drug use, both occurring within weeks of his being released. This indicated to the trial court that its confidence in the Defendant as a good candidate for probation was misplaced. The trial court further found that the Defendant had inhibited the probation officer's ability to bring him into compliance by not providing the officer with the ability to contact him by telephone or in person. The trial court expressed concern that the Defendant absconded knowing that there was an arrest warrant out for his violation and that he remained absconded for almost two years. The court stated that it "believe[d] there has been an utter lack of acceptance of responsibility in the history of the conduct." On this basis, the trial court ordered the Defendant to serve his sentence in confinement.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court abused its discretion when it ordered that he serve the balance of his sentence in confinement based upon one violation of his probation and in spite of his extenuating circumstances that required his attention.

4

The State counters that the trial court properly revoked the Defendant's probation and ordered him to serve the balance of his sentence in confinement. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2014), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2014). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2014); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this Court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id.* at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

The record in this case provided substantial evidence to support the trial court's revocation of probation. First, the Defendant agreed that he had violated the terms of his probation by both using cocaine and marijuana and by absconding from supervision. The Defendant's admission of a violation has itself been held to be "substantial evidence" that the violation took place. *State v. Glendall D. Verner*, No. M2014-02339-CCA-R3-CD, 2016 WL 3192819, at *7 (Tenn. Crim. App., at Nashville, May 31, 2016), *perm. app. denied* (Tenn. Sept. 30, 2016). (citing *State v. Yvonne Burnette*, No. 03C01-9608-CR-00314, 1997 WL 414979, at *2 (Tenn. Crim. App., at Knoxville, July 25, 1997)).

After the trial court found that the Defendant had violated the terms of his probation it retained discretionary authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to order the Defendant to serve his sentence in incarceration. The determination of the proper consequence of a probation violation embodies a separate

exercise of discretion. *State v. Hunter,* 1 S.W.3d 643, 647 (Tenn. 1999). Case law establishes that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

We conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve the balance of his sentence in confinement. The Defendant used marijuana and cocaine shortly after being released from confinement and placed on supervised probation. The Defendant thereafter failed to report for approximately twenty-two months until officers arrested him pursuant to an outstanding arrest warrant. The Defendant knew of the outstanding warrant, but he chose not to contact his probation office, citing family issues. The record supports the trial court's order requiring the Defendant to serve the remainder of the original sentence incarcerated.

## III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

6