IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 19, 2022

## STATE OF TENNESSEE v. DANIEL SMITH

**Appeal from the Criminal Court for Shelby County**
**No. 19-05778, James M. Lammey, Judge**

_____

### No. W2021-01075-CCA-R3-CD

_____

The Defendant, Daniel Smith, appeals the trial court's revocation of his ten-year probation sentence for aggravated assault. The trial court determined that the Defendant's act of sending a letter to the victim violated the terms of his probation sentence and ordered the Defendant to serve his sentence. The Defendant asserts that the trial court's revocation of his probation sentence was an abuse of discretion and that he should be returned to service of a probation sentence. After review, we conclude that revocation of the probation sentence was not an abuse of discretion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Phyllis Aluko, Shelby County Public Defender; Tony N. Brayton (on appeal), Assistant Shelby County Public Defender; and Robert H. Gowen, Assistant Shelby County Public Defender (at hearing), Memphis, Tennessee, for the appellant, Daniel Smith.

Herbert H. Slatery III, Attorney General and Reporter; Lindsay Haynes Sisco, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Michael Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

In September 2019, a Shelby County grand jury indicted the Defendant for aggravated assault and domestic assault of the victim in May 2019. On July 21, 2020, the Defendant pleaded guilty, as a multiple offender, to aggravated assault for an agreed upon ten-year probationary sentence. In accordance with the agreement, the State dismissed the remaining charge. In relevant part, a condition of the Defendant's probation sentence

required no contact with the victim.  Additionally, the Defendant agreed that he would not engage in "any assaultive, abusive, threatening or intimidating behavior."  He signed his acknowledgment of and agreement to comply with the conditions of his probation sentence on the same day of sentencing.

On July 29, 2021, the Defendant's probation officer filed an affidavit, alleging that the Defendant had violated the conditions of his probation as follows:

> [The Defendant] violated Rule #1 [that the Defendant would obey the laws] in that he was arrested on 7/27/2020 for the offense of Stalking.  The case was Held To State on 9/23/2020 and was filed in Criminal Division V on 4/20/2021 under case number C2100898.  The Grand jury indicted [the Defendant] on 4/21/2021.  The case is set for Report on 7/29/2021.

> [The Defendant] violated Rule #14 [that he would not engage in any assaultive, abusive, threatening or intimidating behavior] in that he was arrested for the offense of Stalking reflecting his engagement in threatening and/or intimidating behavior.

Based upon these allegations, the trial court issued a warrant for the Defendant's arrest.

The trial court held a probation violation hearing on August 26, 2021, to determine whether the Defendant had violated the conditions of his probation sentence.  At the hearing, the State asserted that the Defendant wrote a letter to the victim to be delivered after he pleaded guilty on July 21, 2020, in violation of his probation.  Defense Counsel responded, "we don't dispute any of that.  [The Defendant] is sorry.  He has stopped writing [the victim], all together."  Defense Counsel asked the trial court to return the Defendant to probation.

The victim identified a letter she received from the Defendant on July 22, 2020.  She explained that the receipt of this letter caused her fear "[b]ecause [she] thought since he had pled guilty he wasn't going to contact [her] anymore."  When asked how the letter had affected her, she replied, "He keeps terrorizing me and my family and I just wanted him to leave me alone and he won't leave me alone."

The victim testified that the July 22, 2020 letter was not the first letter the Defendant had sent her and that he had "violated his Order of Protection numerous times before."  She estimated that the Defendant had sent her five or six other letters and attempted to contact her by phone.  The victim identified a portion of the July 22, 2020 letter that read, "Wait until July 22."  The victim stated that this caused her to think "he was trying to wiggle his

2

way out of trouble, because he already pled guilty saying that he wasn't going to contact [her], but yet [he] still contacted [her]."

The victim described the impact of the Defendant's contact on her family as follows:

My daughter's tried to kill herself and she is only eleven years old. She was in therapy and my son had to go to therapy, my daughter has nightmares at night, crying and can't sleep, because she's so afraid that he is going to come and find us and kill us. I have nightmares (uncontrollably crying).

I haven't gone out because I don't want to run into him, even though I know he is locked up, it just terrifies me.

On cross-examination, the victim admitted that initially she accepted the Defendant's collect phone calls, but even after she stopped accepting the calls he continued to call. She further agreed that she responded to some of the Defendant's letters in writing. At some point, however, she told the Defendant she no longer wanted any contact with him. The victim agreed that she had not received any letters from the Defendant since the July 22, 2020 letter. She had since changed her telephone number so she was unaware of any attempted phone calls from the Defendant.

Upon questioning by the trial court, the victim recounted some of the abuse the Defendant inflicted upon her and her children.

The Defendant testified that he pleaded guilty and "shortly thereafter" "sent a letter to the [victim.]." He confirmed that his conduct was "a mistake" and something for which he was sorry. The Defendant apologized to the trial court and explained that he "was just trying to make things right with [the victim], but [he] ended up making things worse." The Defendant confirmed that he had not attempted to contact the victim in over a year. The Defendant asked the trial court to return him to probation.

On cross-examination, the Defendant agreed that a ten-year probation sentence in light of the "very serious offenses" was "a break." The Defendant agreed that he pleaded guilty to violation of a protective order for contact he had in the past with the victim. The Defendant confirmed that at the guilty plea hearing, the trial court had instructed him that he was not to have contact with the victim, and he had agreed to the condition. The Defendant explained the July 22, 2020 letter as follows:

Well, it was just a stupid mistake. I was trying to, I guess you can call it, I was trying to be sneaky, I was trying to wait until the order of protection

would end and she would get it when it expired, but at the same time I still shouldn't have wrote it, it was a mistake on my part.

The Defendant agreed that he was "trying to be slick and trying to skirt around the law." He confirmed that he was aware that the victim wanted no contact with him. He explained that the purpose of the letter was to "try to ease her pain and let her know that [he was] going to apologize for what [he] did." He then noted that "a lot" of the victim's testimony at the hearing about his abuse was not true. The Defendant agreed that he told the trial court at the guilty plea hearing that he would not contact the victim and then the following day, the victim received a letter from him.

Based upon this evidence, the trial court found, by a preponderance of the evidence, that the Defendant had violated the conditions of his probation by contacting the victim. As a result, the trial court ordered service of the ten-year sentence. It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant asserts that the trial court abused its discretion when it revoked his probation sentence and ordered him to serve his sentence in confinement. The State responds that the trial court acted within its discretion when, after determining that the Defendant had violated the terms of his probation, revoked the probation sentence and placed the sentence into effect. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2019), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2019). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2019); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order

for this Court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id.* at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

The record in this case provided substantial evidence to support the trial court's revocation of probation. First, the Defendant admitted contacting the victim. Based upon the testimony at the hearing, it is clear the Defendant understood that he was not to have any contact with the victim and was aware of the consequences of failing to comply. *See State v. Zantuan A. Horton*, No. M2014-02541-CCA-R3-CD, 2015 WL 4536265, at *3 (Tenn. Crim. App., at Nashville, July 28, 2015) (stating that a defendant who admitted violating the terms of his probation conceded an adequate basis for finding of a violation), *no perm. app filed*. Despite his understanding that he could not contact the victim, the victim received a letter from him. The Defendant offered little explanation as to why he told the trial court he would not contact the victim knowing either that she would receive a letter from him or sending it after assuring the trial court he would have no contact. Moreover, the Defendant acknowledged his intent to "skirt around the law." This evidence supports the trial court' conclusion that the Defendant violated the condition of probation.

After the trial court found that the Defendant had violated the terms of his probation, it retained discretionary authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to order the Defendant to serve his sentence in incarceration. The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 647. Case law establishes that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

We conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve the remainder of his sentence. The Defendant failed to comply with the condition of his probation requiring him not to contact the victim. Additionally, one of the Defendant's prior convictions was for violating an order of protection against the victim, exhibiting a pattern of difficulty with compliance. Accordingly, we conclude that the trial court correctly found that the Defendant violated a condition of his probation sentence and then, in its discretion, properly determined the consequence of the violation. Therefore, the Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____

ROBERT W. WEDEMEYER, JUDGE