# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs February 13, 2013

## STATE OF TENNESSEE v. WILLIAM BENTON PAMPLIN

**Appeal from the Circuit Court for Bedford County**
**No. 17233      Lee Russell, Judge**

---

**No. M2011-01932-CCA-R3-CD - Filed February 14, 2013**

---

The Defendant, William Benton Pamplin, pled guilty to burglary of an automobile, vandalism, burning of personal property, and possession of a weapon by a felon. The trial court sentenced him to a six-year sentence, which was to be served on probation. The Defendant's probation officer filed a probation violation warrant, alleging the Defendant had violated the terms of his probation by filing a false police report. After a hearing, the trial court agreed and revoked the Defendant's probation. On appeal, the Defendant contends that the trial court improperly ordered him to serve the balance of his sentence in confinement. After a thorough review of the record and applicable authorities, we conclude that the trial court did not err when it revoked the Defendant's probation and ordered the Defendant to serve the balance of his sentence in confinement. We, therefore, affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JEFFREY S. BIVINS, JJ., joined.

Andrew Jackson Dearing, Shelbyville, Tennessee, for the appellant, William Benton Pamplin.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Robert Carter, District Attorney General; and Richard Cawley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

On October 6, 2011, the Defendant entered a guilty plea to the aforementioned charges, and the trial court sentenced him to six years, all of which was to be served on probation. On May 26, 2012, the Defendant was arrested for filing a false police report. Shortly thereafter, his probation officer filed an affidavit alleging that the Defendant had violated his probation based upon this new charge.

At the hearing on the probation violation warrant, the parties presented the following evidence: The State informed the trial court that the Defendant's probation officer was ill and unable to attend the hearing. It felt, however, that it could still offer sufficient evidence that the Defendant violated his probation. Jerry Armstrong testified that he repaired boats to earn extra money. Armstrong said he knew the Defendant through a mutual acquaintance, Morgan Ray, who was Armstrong's wife's uncle.

Armstrong testified that Ray told him that the Defendant wanted his boat repaired. Armstrong and Ray went to the Defendant's house on July 18, 2011. Ray knocked on the Defendant's door and then went inside, and Armstrong said the two discussed the boat repairs. The Defendant and Ray returned to the front door and told Armstrong that the boat was around back in a carport. Armstrong pulled his vehicle back to the carport and loaded the boat. Armstrong testified that the Defendant was present while Armstrong loaded the boat onto Armstrong's vehicle.

Armstrong said that he drove the boat back to his house, drained the carburetors, put new gas in it, and then went to the river and tried to start the boat. Upon starting the boat, Armstrong realized that the "bottom transit" of the boat was broken and spraying water. Armstrong opined that the transit had frozen, causing it to burst. After extensive work over a period of four weeks, Armstrong fixed the boat, and Ray informed the Defendant that Armstrong had fixed the boat. Armstrong learned that the Defendant did not intend to pay for the boat repairs.

Armstrong said that he told Ray that he was keeping the boat until the Defendant paid him for the repair. Armstrong attempted to get a workman's lien on the boat, but he was unable to do so because he did not have a business license. Armstrong said he stored the boat in his yard and took the tires off the trailer so that the boat could not be moved. Armstrong said he returned home from work one evening, and his neighbor informed him that police had come to his home and confiscated the boat. Armstrong said he went immediately to the Sheriff's Department where he learned that the Defendant had reported the boat stolen.

During cross-examination, Armstrong testified that Ray, and not the Defendant himself, was the one who approached him about working on the boat. Armstrong maintained that the Defendant was present when he picked up the boat but agreed that he never

personally spoke with the Defendant about repairing the boat. Armstrong agreed that, when he tested the boat in the river, it was Ray and not the Defendant who assisted him. Armstrong said that he informed Ray about the extensive repairs that the boat required, and he quoted Ray a price. He said that, the following day, Ray was arrested.

Armstrong conceded that he did not speak with the Defendant about the cost of repairs. Armstrong said that Ray called him from jail and told him to take the boat back to the Defendant. Armstrong told Ray that he would not return the boat until he was paid for the repair.

Greg Lloyd, an officer with the Shelbyville Police Department, testified that the Defendant reported to him that the Defendant's boat had been stolen. The Defendant told Officer Lloyd that he had called "around" and learned that his boat was at a residence on Shelbyville Mills Road. He said that he had driven by and seen the boat at this residence. Officer Lloyd testified that the Defendant told him that he had contracted with Ray the previous June to have the boat detailed. The Defendant did not inform the officer that he had asked Ray to have the boat repaired, and he failed to mention to the officer that the boat had been repaired at all. The Defendant did not tell the officer that he had given anyone permission to take the boat for repairs or that there was a dispute about the money he owed for the repair.

During cross-examination, Officer Lloyd testified that the Defendant did inform him that he gave Ray permission to take his boat for cleaning.

The Defendant testified that in May, before he gave his boat to Ray for cleaning, his boat was running, but it needed to be cleaned. He asked Ray to take the boat and clean it. The Defendant told Ray he would pay Ray for his services from the proceeds of the sale of the boat. The Defendant believed Ray would take the boat to Ray's sister's house, clean it, and then take it to a shop to be sold.

The Defendant said that, after giving the boat to Ray, he began to look for the boat. He contacted Ray's girlfriend, who informed him that Ray was in jail for DUI charges. The Defendant said that he did not know where the boat was located, so he told Ray's girlfriend to tell Ray that whoever had the boat needed to return it to him. The Defendant testified he contacted Ray's girlfriend weekly and that he repeatedly informed her that he needed his boat returned. During one of their conversations, Ray's girlfriend told him that Ray was going to get "David Mills" to return the boat.

The Defendant said that he gave only Ray permission to take his boat. Ray never informed him that Armstrong was going to repair his boat. He said that he had no idea that

Armstrong had, or was working on, the boat. The Defendant said Ray's girlfriend eventually informed him where the boat was located, and she took him to see the boat parked behind Armstrong's house. The fuel tank of the boat was off the boat, the battery was located on the "tongue" of the boat, and the tires were removed from the trailer. Finding the boat in this condition, he said, heightened his suspicion that it had been stolen.

The Defendant said that, at the time, he believed his boat had been stolen. Accordingly, he called police and reported his boat stolen. The Defendant said that he told police that he had given Ray permission to take his boat and explained that, when Ray arrived to pick up the boat, the Defendant was confined to his bed as the result of a truck accident. The Defendant's friend, therefore, answered the door, and Ray informed him that he had someone with him who could tow the boat. Shortly thereafter, Ray was incarcerated for DUI, and the Defendant did not know the whereabouts of his boat.

The Defendant said he did not knowingly file a false report, and he reiterated that he believed that his boat had been stolen.

During cross-examination, the Defendant testified that he never saw Armstrong when Ray came to his house to get the boat. He said he did not participate in a conversation with Ray about fixing his boat. He said that he never contacted Ray directly about finding his boat, opting instead to contact Ray's girlfriend because Ray was incarcerated. He denied that he knew where the boat was located before Ray's girlfriend told him the location. The Defendant agreed that he did not clarify with Ray if Ray had taken the boat to Armstrong's house before he filed a police report. The Defendant agreed that Ray knew where the boat was located, but the Defendant again said he had no personal knowledge of the location.

Based upon this testimony, the trial court found:

It is my conclusion in this situation that the, that Number 1, he is on supervision; and Number 2, that he has violated one or two more of the terms of his supervision, in that he knowingly filed a false report with law enforcement. I found the, that both the State's witnesses entirely credible, but I think that [the Defendant] was certainly a witness to the transaction. This was a way of trying to get a boat back without paying for the repairs. He didn't think it had been stolen. His, his explanations of events simply was not credible. And so, I'm going to revoke hi[s] [probation] and [order him to] serve the balance [of his sentence].

## II. Analysis

On appeal, the Defendant contends that the trial court erred with it found that he violated his probation. He asserts that the State failed to carry the required burden of proof, and the evidence presented was not sufficient to justify revoking his probation. The State counters that the trial court accredited the testimony of the State's witnesses, and that the testimony was sufficient to show that the Defendant violated his probation. Accordingly, the trial court acted within its discretion when it ordered the Defendant to serve the remainder of his sentence in confinement. We agree with the State.

In Tennessee, the procedure for a revocation of a probation sentence is set out in Tennessee Code Annotated section 40-35-311 (2010). The statute provides, in part, as follows:

> Whenever it comes to the attention of the trial judge that any defendant, who has been released upon suspension of sentence, has been guilty of any breach of the laws of this State or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case.

T.C.A. § 40-35-311(a).

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e)(2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. § § 40-35-308(a), (c), -310 (2010); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this Court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). Further, finding of abuse of discretion "reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." *Shaffer*, 45 S.W.3d at 555 (citing *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the case presently before us, the record supports the trial court's ruling that the Defendant violated his probation. The trial court found the State's witnesses credible and expressed its finding that the Defendant's explanation of events was not credible. According to the evidence presented, Ray and Armstrong went to the Defendant's house to discuss repairing his boat. Armstrong was present while Ray and the Defendant discussed the repairs, and then, with the Defendant's permission, Armstrong and Ray towed the boat to Armstrong's house for repairs. Armstrong and Ray discussed the necessary repairs, shortly after which Ray was incarcerated. Armstrong contacted Ray and told him that the Defendant needed to pay him for the repairs. After Armstrong did not receive payment for the repairs, he took the tires off of the boat trailer so that it would remain in his yard until he received payment. The Defendant contacted Ray's girlfriend on multiple occasions inquiring about his boat. She took him to where the boat was located. The Defendant then called the police and filed a police report saying that his boat had been stolen. The Defendant failed to tell police officers that he had contracted to have the boat repaired and had not paid for the repairs. This evidence is sufficient to support the trial court's finding that the Defendant violated his probation. Once the trial court has found that a defendant has violated the terms of his or her probation, it is vested with the statutory authority to revoke the probation and order him to serve some or all of his original sentence in confinement followed by probation. *Hunter*, 1 S.W.3d at 644. Under these circumstances, we find no abuse of discretion in the trial court's revocation of the Defendant's probation and its ordering the Defendant to serve the balance of his sentence in confinement. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based upon the foregoing authorities and reasoning, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE