IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 24, 2013

## STATE OF TENNESSEE v. MALCOLM MCKOY

**Appeal from the Criminal Court for Hamilton County**
**No. 262352    Don W. Poole, Judge**

---

**No. E2013-00492-CCA-R3-CD - Filed October 4, 2013**

---

The Defendant, Malcolm McKoy, pled guilty to theft of property valued over $500 and burglary. The trial court sentenced the Defendant to concurrent four-year and six-year terms, suspended to be served on unsupervised probation. These sentences were to run consecutively to another sentence unrelated to this appeal. After two subsequent probation violations based on new arrests, the Defendant was arrested for aggravated assault. A probation violation warrant was issued based upon this arrest, and, after a hearing, the trial court revoked the Defendant's probation. On appeal, the Defendant contends that there was insufficient evidence to warrant a revocation of his probation. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE JJ., joined.

Ardena J. Garth and Richard Kenneth Mabee, Chattanooga, Tennessee, for the Appellant, Malcolm McKoy.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; William H. Cox, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

1

This case arises from the Defendant's multiple violations of his probation sentences. On October 24, 2007, in case number 262352, the Defendant pled guilty to theft of property valued over $500 and burglary. Pursuant to the plea agreement, the trial court sentenced the Defendant, as a Range II offender, to serve a suspended four-year sentence for the theft conviction and a suspended six-year sentence for the burglary conviction. The sentences were to run concurrent with one another and to be served on unsupervised probation.

On October 8, 2009, the trial court issued a probation violation warrant based upon the Defendant's new arrests. As a result, the trial court amended the original judgments by placing the Defendant on supervised probation. On June 29, 2010, the Defendant was again arrested, and a probation violation warrant issued based on this new arrest, the Defendant's failure to report, and the Defendant's failure to pay probation fees.

On June 24, 2011, the Defendant was again arrested for driving on a suspended license, possession of marijuana, and possession of a controlled substance. As a result of these violations, the trial court placed the Defendant on intensive supervision. On November 26, 2012, the Defendant was arrested for aggravated assault and a probation violation warrant was issued. The trial court conducted a hearing on the alleged violation, and the parties presented the following evidence: Tabitha Presley testified that she and the Defendant lived together between September and November 2012. She described the Defendant as her "boyfriend" at that time. Presley recalled an "event" on November 20, 2012, that occurred between her and the Defendant:

> Me and [the Defendant], we got into an altercation prior to that event, the same day though. He stormed out [of] the house and he went down the street. I went to the edge of my yard and I yelled down the street he need[ed] to come get his stuff. He came back in a cab, all hostile and mad. He was like what did you say. I was like I ain't saying nothing. He was like what did you say. I was like I ain't saying nothing. By this time he was already mad. I was in the car smoking a cigarette and he just went berserk.

Presley explained that when the Defendant "went berserk" he choked, beat, and pushed her. She said that the Defendant told her that he would "take [her] out." Presley said that she tried to "fight back." At some point, Presley's neighbors approached, and the Defendant stopped. As a result of this interaction, Presley said that she sustained marks on her neck, a knot on her head, and a black eye. She said that she did not seek medical attention but reported the incident to police.

On cross-examination, Presley agreed that she failed to follow through with the complaint against the Defendant by not appearing in general sessions court. As a result, the

2

case against the Defendant was dismissed. Presley explained that she did not attend court on the first date because she had "finals" and on the second court date because she had her dates "mixed up." Presley agreed that she spoke with the Defendant following the incident.

Harold Diaz, a Chattanooga Police Department officer, testified that, on November 20, 2012, Presley reported the event involving the Defendant. Officer Diaz said that he observed injuries on Presley's forehead, left cheek, and upper eye area. He further observed "some redness" on the left side of Presley's neck.

Kevin Adkins, a Tennessee Department of Correction probation officer, testified that he supervised the Defendant and filed a probation violation report with the court on November 26, 2012, based on a new arrest for domestic assault and other technical violations. As to the technical violations, Adkins explained that the Defendant was required to report any new arrest to his probation officer immediately. Adkins said that, at the time of the report, the Defendant had not reported the aggravated assault arrest. Adkins said that probation rules also prohibited the Defendant from using drugs and alcohol and that the Defendant had tested positive for marijuana on two separate occasions, July 17, 2012 and October 24, 2012. The Defendant had also failed to pay probation fees. Another condition of probation required the Defendant to be at his place of residence from 6:00 p.m. until 6:00 am. Adkins stated that the Defendant was not at home by curfew time on three[1] different occasions. Finally, probation rules prohibited the Defendant from engaging an assaultive or abusive behavior, which was the issue in his latest arrest.

Adkins testified that he had been supervising the Defendant since September 23, 2011, when the trial court moved the Defendant to "enhanced" probation due to a violation. Adkins stated that the Defendant had two prior probation violations based on new arrests.

On cross-examination, Adkins testified that he did not have the lab results for the drug screens but had two "admittal forms" signed by the Defendant acknowledging that he had used drugs.

The Defendant testified about the November 20, 2012 assault charge stemming from his altercation with Presley. The Defendant described himself and Presley as "friends." He said that Presley and his girlfriend had "differences." The Defendant said that "after the nightclub" at about 5:00 a.m., he and Presley "had some words" and "both [were] physical."

---

[1] Adkins testified to five occasions, two of which were in October. On cross-examination he agreed that the Defendant notified him of an address change in October and, thus two of the five occasions, Adkins may have gone to the old address. Based upon this testimony, the trial court found that there was no proof of the October violations.

He said he left her house, and she called police. He denied hitting Presley or choking her. He explained that Presley was trying to block him from leaving, so he pushed her "by her neck." He maintained that he did not choke her and denied ever punching her.

The Defendant testified that he attempted to report the new arrest stemming from the altercation with Presley to his probation officer, but Adkins had already filed a probation violation report. The Defendant explained that he reported to Adkins twice a month, so he believed that his duty to report was at the time of his next probation appointment. He said that on the intake form for his next appointment, he indicated that he had been arrested since his last probation appointment.

The Defendant testified that he had never taken "any urinalysis." He said that on both occasions when he admitted to marijuana use, he signed paperwork admitting the use and did not take a drug test. The Defendant denied "constant use" of marijuana and said that on both occasions he had used marijuana "a couple of weeks" before.

As to the Defendant's failure to pay probation fees, the Defendant testified that he told Adkins that he had filed for disability and been denied. He said that he informed Adkins he was "in the process of filing again." Several days after his arrest, he received another denial. The Defendant said that the basis for his disability was having been "shot seven times." He explained:

> I have fourteen plates and a rod and a screw replacing my left femur. I have a bullet still in the back of my left knee. I have a bullet still in my left lung. I have limited use of my right hand which I'm right-handed. My right wrist doesn't bend. In August 8, 2008, I cut my hand and had cut my tendons and stuff and had surgery on two of my fingers and two of them I still haven't had surgery on.

The Defendant stated that he had no work history other than "odd jobs helping family members." The Defendant said that he had a job offer if the trial court reinstated his probation and expressed a desire to "pay some debt back to society."

On cross-examination, the Defendant testified that he did not believe that he was away from his home during curfew. He explained that his "step-son" came home from school at 3:00 p.m., and the child's mother went to work at 2:00 p.m. and worked until 9:00 p.m. He said that, during this time, he primarily watched the child once he was home from school. He then stated, "honestly I am there from three till nine or ten. I may leave after that but I'm right back." He also stated that "someone" in his neighborhood would have told him Adkins came by looking for him, if Adkins had come to the house while the Defendant was not there.

4

The Defendant agreed that he used marijuana occasionally but maintained that he never took a urinalysis. He explained that he experienced pain in his leg and would use marijuana at times "just to relax and try to go to sleep." The Defendant maintained that he never hit Presley. He said that after pushing her out of his way, he left the house. The Defendant agreed that he has been on "active probation" since October 2007, and since that time he had pled guilty to eight different offenses.

After hearing all of the proof, the trial court revoked the Defendant's probation. The trial court made the following findings in support of the revocation:

> I do find by . . . the preponderance of the evidence that [the Defendant] has violated the terms of his probation in this respect. I do find in regard to the reporting arrest, I think there is probably a violation but I'm not going to treat that overly harsh in view of the fact that he did write down at least on his first visit that he had been arrested. But I do find that he has violated the terms of his probation by using marijuana, by admitting the use of marijuana and I do give credit to Mr. Adkins when he says that they did test him and he did test positive. But at least by his own admissions [the Defendant] has violated the probation by continuing to use marijuana.
>
> . . .
>
> I think it's very difficult for convicted felons, certainly in the condition of [the Defendant] to pay all of his court costs and probation fees, although he violated probation by not doing that. I would not order any sentence into execution based upon that.
>
> I do find based upon credible proof from Mr. Adkins that he has violated the curfew at least on the three occasions in July, August and September, as testified to by Mr. Adkins. I give him the benefit of the doubt that he moved around from one girl friend to this relationship with Ms. Presley in October and apparently did put a Rawlings Street address down. But once again, I do find that on those three occasions that he violated the terms of his probation.
>
> I do find that he is engaged in assaultive conduct. I do think Ms. Presley presented credible proof, that he mistreated, assaulted her on the occasion that she mentions. I think that is corroborated by the testimony of Officer Diaz. I do find based upon those violations that he has violated the

5

terms of his probation.

The trial court noted that the Defendant had been found in violation of the terms of his probation on two prior occasions, January 2010 and September 2011. The trial court then ordered the remainder of the four-year term for the theft conviction into execution but partially revoked the six-year sentence for aggravated burglary, indicating that at the end of the four-year term, the Defendant would be returned to probationary status for the remainder of the six years. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant contends that the trial court's revocation of his probation sentence was an abuse of discretion. Specifically, he attacks the evidence as insufficient to support a revocation of his probation sentence. The State responds that the trial court properly revoked the Defendant's probation. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2010), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2010); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this Court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the present case, the Defendant's probation officer, Adkins, testified about two instances where the Defendant failed a drug screen. The Defendant signed paperwork acknowledging his drug use while on probation and admitted at the revocation hearing that he had used marijuana in violation of the terms of his probation sentence. Adkins also testified about at least three occasions where the Defendant was in violation of the terms of his curfew. Although the Defendant challenges the validity of his curfew violations, he testified at the revocation hearing that he "may" have left after his girlfriend arrived home from work at 9:00 p.m. or 10:00 p.m. Finally, Presley testified about an altercation with the Defendant during which she sustained injuries to her face and neck. Officer Diaz confirmed seeing injuries to Presley's face and neck on the same day of the incident. This evidence supports a finding that the Defendant engaged in assaultive, abusive, threatening or intimidating behavior in violation of the terms of his probation.

The record contains the testimony of witnesses concerning the Defendant's violations of probation and the Defendant's own admissions to violating the terms of his probation. The trial court heard the proof and accredited the State's witnesses. We conclude that there is substantial evidence supporting the trial court's conclusion that violations of the terms of the probation sentences occurred and that the Defendant's probation should be revoked based upon those violations. *See State v. Delp,* 614 S.W.2d 395, 298 (Tenn. Crim. App. 1980). Accordingly, the trial court did not abuse its discretion when it revoked the Defendant's probation. The Defendant is not entitled to relief as to this issue.

### III.  Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

7