IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs in Knoxville November 28, 2017

**STATE OF TENNESSEE v. RAMIRO R. IBARRA**

**Appeal from the Circuit Court for Warren County**
**No. F-14254     Larry B. Stanley, Jr., Judge**

_____

**No. M2017-00668-CCA-R3-CD**

_____

The Defendant, Ramiro R. Ibarra, pleaded guilty to one count of vehicular homicide and three counts of vehicular assault. The trial court sentenced him to twelve years and ordered that he serve 364 days in confinement and the remainder of his sentence on Community Corrections. The Defendant's probation officer alleged that the Defendant violated his probation and, at a hearing, the Defendant admitted that he violated the conditions of his probation. The trial court revoked his probation and ordered that he serve his sentence in confinement. On appeal, the Defendant contends that the trial court erred when it ordered that he serve his sentence in confinement. On appeal, we affirm the trial court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and J. Ross Dyer, J. joined.

Joshua T. Crain, Murfreesboro, Tennessee, for the appellant, Romiro R. Ibarra.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Lisa S. Zavogiannis, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case arises from a traffic accident occurring when the Defendant was driving after "huffing canned air" and resulted in the death of a young girl and the injury of three

other people. In relation to this accident, the Defendant pleaded guilty to one count of vehicular homicide and three counts of vehicular assault. The trial court sentenced him to twelve years and ordered that he serve 364 days in confinement and the remainder of his sentence on Community Corrections. A little more than a year after the Defendant was released to Community Corrections, his supervision was transferred to probation, after which his probation officer filed a probation violation affidavit. In the affidavit he alleged that the Defendant had failed to report, failed to complete a drug and alcohol assessment, admitted methamphetamine use, and failed to pay court costs.

The trial court held a hearing on whether to grant the Defendant bond while he was awaiting a hearing on his probation violation.[1] The Defendant's mother testified that, after his conviction, the Defendant had lived with her and her husband. She said that, while living with her, he had worked at a nursery, a pumpkin patch, and a tool store. Ms. Ibarra testified that, in September 2016, the Defendant broke his phone, so she called the Defendant's probation officer to determine the date of the Defendant's next appointment. She said that the Defendant's probation officer, Mr. Solomon, told her that the Defendant was a grown man and needed to contact his probation officer himself. She testified that Mr. Solomon told her that there was a warrant out for the Defendant's arrest, and the Defendant turned himself in to police. During cross-examination, Ms. Ibarra testified that the girl killed in the accident was related to her. Ms. Ibarra said she was unaware that the Defendant admitted to using methamphetamine. She agreed that the Defendant knew there was a warrant out for his arrest but did not turn himself in for several weeks.

The Defendant's father testified that he went to the probation office to find out the date of the Defendant's next probation appointment. He was told that they could not give him that information because the Defendant was not under age and was responsible for himself. During cross-examination, Mr. Ibarra testified that both he and his wife have cell phones. He said that the Defendant did not use them to call because they "needed" their own phones. Mr. Ibarra said he was unaware of the Defendant ever using methamphetamine.

The Defendant's girlfriend, Sarah Pease, testified that she lived with the Defendant and his parents. She said that she and the Defendant got a job at the same location so that he would have stable transportation to and from work. On their first day of work, the Defendant received a voicemail from Mr. Solomon that said he needed to report to Mr. Solomon's office. Ms. Pease and the Defendant left work early so they could go to the appointment. Ms. Pease said that, two days later, Mr. Solomon scheduled

---

[1] We will summarize the evidence presented at the bond hearing because, at the hearing on the probation revocation, the Defendant's attorney told the trial court that, based on the evidence presented at the bond hearing, the Defendant wanted to enter an admission to violating his probation.

2

another appointment for 12:00. The next day, Mr. Solomon made a third appointment, and, on this basis, they were terminated from their employment. Ms. Pease said that she had called Mr. Solomon about the Defendant's appointment, but Mr. Solomon told her he could not discuss it with her. During cross-examination, she said that Mr. Solomon never gave her a date for the Defendant's probation appointment. She said she was unaware that the Defendant said he had used methamphetamine.

Clay Solomon, the Defendant's probation officer, testified that the Defendant admitted to using methamphetamine on July 18, 2016, but his drug test on August 3 was negative. Mr. Solomon said that, since the Defendant admitted to drug use but the screen was negative, he recommended a substance abuse evaluation. The Defendant said that he wanted help with his problems. On the Defendant's report form from the August 3 meeting, the Defendant said he was unemployed. At their next meeting on August 8, the Defendant again said he was unemployed. Mr. Solomon said that he never required the Defendant to report three times in one week. The Defendant reported May 16, May 24, July 12, August 3, and August 8. Mr. Solomon said that the reason the Defendant had two scheduled appointments in one week in August was based on the fact that he admitted to drug use on August 3. His August 8 appointment was to schedule the meeting for the alcohol and drug assessment. Mr. Solomon scheduled the drug assessment for August 10 and another appointment on September 12, and the Defendant failed to appear for either.

Mr. Solomon said that he never spoke with Mr. Ibarra but that, when he spoke with Ms. Ibarra, he informed her that the Defendant had already violated his probation and the probation violation had been submitted to the court.

During cross-examination, Mr. Solomon said that he did not file the probation violation warrant until October 5, after the Defendant had missed the drug assessment and another probation appointment.

After hearing the evidence, the trial court denied bail.

At a hearing on the probation violation, the Defendant's attorney informed the trial court that the Defendant admitted that he violated his probation based on the grounds specified in the warrant, making the hearing just one to determine his sentence. The State's attorney said that, at first, the Defendant did well on Community Corrections, so he was placed on State probation. At that time, the Defendant said that he would fail a drug test because he had used methamphetamine, but his drug test came back "clean." The State said that the Defendant failed to comply with an alcohol and drug assessment and failed to report as he was required.

3

The Defendant's attorney said that, while the State's factual basis was generally correct, it was unclear whether the Defendant was saying that he had "urges" to use drugs or had used drugs. The Defendant told his attorney that the probation officer said that the only way that he could get help was if he admitted to using drugs, so the Defendant signed off on the admission.

The Defendant's probation officer, Mr. Solomon, testified that the Defendant's probation was transferred to him in May 2016. Mr. Solomon said that he gave the Defendant a document of rules, which the Defendant said he understood. At their initial appointment, on May 16, 2016, they went over a variety of forms and the conditions of probation. Mr. Solomon described the first month of probation as "pretty intense" in that the probationer was required to come to appointments twice a month, in addition to a home visit.

Mr. Solomon said that the Defendant's next scheduled appointment was May 24, 2016, and his next scheduled reporting was June 7, 2016. Mr. Solomon attempted a home visit on May 26, 2016, but Mr. Solomon and an associate could not gain entrance through the Defendant's security gate. Mr. Solomon called the Defendant, but the Defendant did not immediately answer. The Defendant called him back shortly thereafter and said that he was home but did not hear Mr. Solomon, a story that Mr. Solomon believed based on the circumstances of the gate and house.

Instead of coming to his appointment June 7, the Defendant came June 6. He said that he had received a traffic violation but had not been arrested. He was next scheduled for July 5, but he later called and asked to reschedule to July 12. The Defendant reported July 12, and he provided a negative urine sample. The Defendant also reported August 3. However, between the July 12 appointment and the August 3 appointment, Mr. Solomon received an anonymous phone call saying that the Defendant may be using drugs and that his urine should be tested. When the Defendant reported August 3, Mr. Solomon asked him about drug use, and the Defendant admitted that he had used methamphetamine July 18. The Defendant's urine sample was negative.

Mr. Solomon said that he told the Defendant that he did not think that a violation was needed but that the Defendant needed a "sanction" of completing an alcohol and drug assessment. He would then need to follow the recommendations of the assessment. Mr. Solomon said that he told the Defendant that as long as he followed through with the recommendations that Mr. Solomon would not involve the court system.

The Defendant reported as scheduled on August 8, and Mr. Solomon reminded him that he had the alcohol and drug assessment on August 10 and scheduled his next appointment for September 12. On August 10, the Defendant came to the office but

4

stated that he had an emergency and had to leave. His appointment was rescheduled for August 17, at which time he failed to report. Mr. Solomon unsuccessfully attempted a home visit on August 22. The Defendant also failed to report on September 12. On September 15, the Defendant's girlfriend called and said that he needed to reschedule his appointment, so Mr. Solomon told her to have the Defendant come in on September 19. The Defendant failed to report on September 19. Mr. Solomon drafted the violation affidavit on September 30 based on the Defendant not completing the alcohol and drug assessment and his failure to report. Mr. Solomon noted that the Defendant did not provide proof of employment as instructed.

The trial court found:

> When you have someone who is engaged in this type of behavior and causes this type of result, the continued use and admission of using methamphetamine and then to be given an opportunity to have treatment for that, an alcohol and drug assessment and then let them decide what [the Defendant] would need to help overcome his addiction or problem with controlled substances and failed to take advantage of that. I can't imagine if I were looking at seven, eight, nine years in prison, I would have made every opportunity to take advantage of what was offered to me and try to stay away from these types of substances and unfortunately, [the Defendant], you were unable to do that. I don't have any other option but to revoke you for the balance of your original sentence.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it revoked his probation. He asserts that his failure to appear as scheduled was likely because Mr. Solomon had him reporting too frequently. He asserts that Mr. Solomon improperly failed to communicate with his family regarding his reporting. He then notes that, while it is uncontested that he admitted to using methamphetamine, he never tested positive for drugs. The Defendant blames Mr. Solomon for his probation violation. The State counters that the record supports the trial court's decision to incarcerate the Defendant. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2014), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original

judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2014). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2014); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this Court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id.* at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the case under submission, at the probation violation hearing the Defendant admitted that he violated his probation. His attorney stated: "[The Defendant] is going to admit that he violated his probation based on the grounds specified in the warrant and it will just become a matter of sentencing as it relates to that violation." The Defendant cannot properly now come before this court and argue that the trial court erred when it found that he violated the terms of his probation. The Defendant admitted his violation before the trial court. Our review is limited, therefore, to whether the trial court abused its discretion when it ordered that the Defendant serve the balance of his sentence in confinement.

"The determination of the proper consequence of a probation violation embodies a separate exercise of discretion." *State v. Devon Alvon Wilson*, No. M2017-00248-CCA-R3-CD, 2017 WL 2954689, at *2 (Tenn. Crim. App., at Knoxville, July 11, 2017) (citing *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007), *no Tenn. R. App. P. 11 application filed*; *see also Hunter*, 1 S.W.3d at 647. Case law establishes that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999). The Defendant admitted that he violated the terms of his probation by using methamphetamine and failing to appear and not submitting to an alcohol and drug assessment. Upon this admission, the trial court acted within its

authority when it ordered the incarceration of the Defendant for the remainder of the original sentence.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE