IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 24, 2020

**STATE OF TENNESSEE v. JESSICA M. THOMPSON**

**Appeal from the Circuit Court for Dyer County**
**Nos. 17-CR-315, 18-CR-199, 18-CR-273        R. Lee Moore, Jr., Judge**

_____

**No. W2019-01007-CCA-R3-CD**
_____

Defendant, Jessica M. Thompson, appeals from the trial court's revocation of her probation. Upon our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Sean Day, Assistant Public Defender (on appeal), and Jimmy Lanier, District Public Defender (at trial), for the appellant, Jessica M. Thompson.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Danny Goodman, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted by the Dyer County Grand Jury in August 2017, case number 17-CR-315, for one count of the sale of methamphetamine in an amount over .5 grams or more. Defendant was indicted by the Dyer County Grand Jury in June 2018, case number 18-CR-199, for one count of failure to appear. Defendant was indicted by the Dyer County Grand Jury in August 2018, case number 18-CR-273, for one count of theft of property valued more than $10,000.

In November 2018, Defendant pled guilty to the sale of methamphetamine over .5 grams or more, failure to appear, and a reduced charge of theft of property valued more than $2,500. Defendant was sentenced to serve sentences of eight years, one year, and two years, respectively. The trial court ordered the sentences to be served consecutively, for a

total effective sentence of eleven years. On December 17, 2018, the trial court suspended the balance of the sentence and placed Defendant on supervised probation so that she could participate in the Madison County Day Reporting Program.

A short time later, in March 2019, a probation violation warrant was executed. The warrant alleged that Defendant violated the terms of her probation by absconding from the reporting center, by testing positive for both amphetamine and methamphetamine, and by failing to successfully complete the day reporting program.

*Probation Revocation Hearing*

The trial court held a hearing on the violation. At the hearing, Altovise Jones, an employee of the Tennessee Department of Correction Probation and Parole at the Day Reporting Center in Jackson, testified that she was Defendant's supervisor from the time Defendant's successful completion of the program became a condition of her probation. Defendant was described as a "Phase 1" participant who was "ordered to report Monday through Thursday from 8:30 to 3:00." According to Ms. Jones, Defendant "[p]robably" missed a couple of days that were excused but generally reported up to January 24, 2019. Defendant "tested positive for amphetamines and methamphetamines January 9, 2019[,] and on January 24, 2019[,]" from a drug test administered by Ms. Jones at the Day Reporting Center. Defendant admitted to Ms. Jones that she used methamphetamines and lab results confirmed the admission.

Ms. Jones filed a violation of probation report on March 21, 2019 for numerous violations including failure to report, failure to meet with her probation officer as instructed, failure to remain drug free, and failure to complete the Madison County Day Reporting Center program.

During her time on probation, Defendant met with a licensed clinical social worker, Mrs. Sheree Watson. Ms. Jones admitted she was aware of some "issues" Defendant was having with Mrs. Watson with regard to confidentiality. Specifically, Ms. Jones testified that Defendant "thought that Mrs. Watson called Child Protective Services on her" and, as a result, Defendant did not feel comfortable talking with Mrs. Watson. Ms. Jones explained that Mrs. Watson was the only licensed clinical social worker with the Day Reporting Center so Defendant continued to meet with Mrs. Watson.

Defendant testified at the hearing that she entered the Day Reporting Center program after her guilty plea and was "successful the first couple of weeks" until "some old friends" starting coming back into her life and she "failed a drug test." Defendant admitted that she passed one drug test by "taking a drink and passing it." Defendant talked to Ms. Jones about this test and let her know that she would fail further testing, including

blood work.  Defendant admitted that at first she was in denial that she needed additional help to battle her addiction.  Defendant explained that she finally admitted that she needed "rehab" but was told that there were not any beds.  Defendant "felt like [she] was being set up for failure" so when she failed a drug test she did not report back to the Day Reporting Center.  She "ran for three months" and eventually turned herself in because of her grandchild, her kids, and she was "tired of having to look over [her] shoulder."  Defendant asked the trial court for placement in long-term in-patient rehab.  She admitted that she asked for rehab at the Day Reporting Center but was told that there was no bed available.

At the conclusion of the hearing, the trial court deemed Defendant the "poster child for doing what you are not supposed to do."  The trial court determined Defendant violated probation by "simply not finishing [the Day Reporting Center] program successfully."  The trial court took note that Defendant was "offered rehab to start with and [she] chose not to do the rehab" only asking for it later when no bed was available.  Defendant "failed to report as ordered; [and she] failed to meet with [her] probation officer as ordered." Defendant "went on the run" after testing positive for both amphetamine and methamphetamine.   In the trial court's assessment, the "real problem" was with Defendant's habit of "blaming somebody else for [her] problem."  Defendant chose the program "with [her] eyes open" and was "offered the thing that [she was] seeking today and [she] didn't take advantage of it."  As a result of the findings, the trial court revoked Defendant's probation in full.

*Analysis*

On appeal, Defendant argues that the trial court abused its discretion by revoking her probation in full because of "technical" violations.  Defendant does not dispute the trial court's determination that she violated the terms of her probation.  The State contends that the trial court did not abuse its discretion.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2019), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e).  If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years.  T.C.A. §§ 40-35-308(a), (c), -310; *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id.* at 555 (*quoting State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

Here, the trial court made findings and conclusions in its ruling, including that Defendant violated the terms of her probation in more than one way. After the trial court found that Defendant had violated the terms of her probation, it retained discretionary authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to order Defendant to serve her sentence in incarceration. The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 647. Case law establishes that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

We conclude that the trial court did not abuse its discretion when it revoked Defendant's probation and ordered Defendant's original sentence into execution. The trial court found that Defendant failed a drug test, failed to report to her probation officer, and failed to complete the Day Reporting Center program while on probation. Defendant admitted that she violated probation by using drugs. This evidence alone is substantial evidence to support the trial court's revocation of probation. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The trial court noted that Defendant was offered rehab when she first started probation. She refused, and was unsuccessful at completing probation on the terms that were set forth in the agreement. Defendant is not entitled to relief.

Defendant also contends that she should have received the same alternative sentence as the defendant in another case, *State v. Julie Paul*, No. E2019-00256-CCA-R3-CD, 2019 WL 5168653 (Tenn. Crim. App. Oct. 15, 2019), *no perm. app. filed*, who also had mere "technical" violations of probation. The State responds that the trial court "had no such obligation to consider a result that another probation violator received in another court." We agree. Defendant is not entitled to relief.

CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.


_____
THOMAS T. WOODALL, JUDGE