IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 17, 2025

**STATE OF TENNESSEE v. BARRY McRAE**

**Appeal from the Circuit Court for Blount County**
**Nos. C-27056, C-27057          David R. Duggan, Judge**

_____

**No. E2024-01501-CCA-R3-CD**
_____

The Defendant, Barry McRae, appeals from the Blount County Circuit Court's probation revocation of the effective eight-year sentence he received for his guilty-pleaded convictions for two counts of delivery of a Schedule II controlled substance. On appeal, he contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TOM GREENHOLTZ, J., joined.

Mack Garner, District Public Defender; and Joshua V. Lehde (on appeal), Public Defender Fellow – Appellate Division, for the appellant, Barry McRae.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; Ryan Desmond, District Attorney General; and Ashley Salem, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On January 13, 2020, the Defendant pleaded guilty by information in docket numbers C-27056 and C-27057 to two counts of delivering 0.5 gram or more of cocaine. The trial court imposed an effective eight-year sentence to be served on supervised probation, and the Defendant was required to complete an alcohol and drug assessment and to follow all recommendations. The guilty plea hearing transcript is not included in the record.

On February 3, 2020, a probation violation warrant was issued based upon the allegations that on January 17, 2020, and on January 24, 2020, the Defendant failed to report to his probation officer for intake after his release from confinement on January 13, 2020. On April 20, 2020, the trial court entered a probation violation order. The court found, based upon agreement of the parties, that the Defendant materially violated the conditions of probation. The court revoked the Defendant's probation, ordered him to serve thirty days in confinement, and returned him to supervised probation. The probation revocation hearing transcript is not included in the record.[1]

On May 11, 2020, a second probation violation warrant was issued based upon the allegation that on April 24, 2020, the Defendant tested positive for methamphetamine and cocaine. On May 13, 2020, the trial court entered a probation violation order, which stated that the Defendant waived his right to a revocation hearing and stipulated to the facts alleged in the probation violation warrant. The court found, based upon agreement of the parties, that the Defendant materially violated the conditions of probation and revoked the Defendant's probation. The court ordered the Defendant to serve ninety days in confinement and returned him to supervised probation.

On November 3, 2021, a third probation violation warrant was issued based upon the allegations that the Defendant failed to "inform his officer before changing his residence," that his whereabouts were unknown, that he failed to report to his probation officer on September 8, 2021, and that he failed to comply with a referral to the peer recovery program on August 21, 2021, September 8, 2021, and September 22, 2021. On January 28, 2022, the trial court entered a probation revocation order, which stated that the Defendant waived his right to a revocation hearing and stipulated to the allegations contained in the revocation warrant. The court found, based upon agreement of the parties, that the Defendant materially violated the conditions of his probation. The court revoked the Defendant's probation, ordered him to serve 180 days in confinement, and returned him to supervised probation.

On September 23, 2022, a fourth probation violation warrant was issued based upon the allegations that the Defendant committed the offense of contempt of court on September 8, 2022; that he failed to contact his probation officer before changing his residence prior to a home visit on September 7, 2023; that he failed to report to his probation officer on August 8, 2022, September 9, 2022, and September 12, 2022; and that he failed to submit to a drug screen on September 2, 2022. On April 21, 2023, the trial

---

[1] *See* T.R.A.P. 24(b); *see also State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal, which includes the obligation to have a transcript of the guilty plea and probation revocation proceedings prepared); *State v. Stack*, 682 S.W.3d 866, 876 (Tenn. Crim. App. 2023).

court entered a probation revocation order, which stated that the Defendant waived his right to a revocation hearing and stipulated to the allegations contained in the probation violation warrant. The court found, based upon agreement of the parties, that the Defendant materially violated the conditions of his probation. The court revoked the Defendant's probation, ordered him to serve 205 days in confinement, and returned him to supervised probation.

On June 15, 2023, a fifth probation violation warrant was issued based upon allegations that the Defendant tested positive for methamphetamine and cocaine on June 1, 2023; failed to pay probation supervision fees, which totaled $1,325.60; and failed to pay court costs, which totaled $8,125.50. On August 7, 2023, the trial court entered a probation revocation order, which stated that the Defendant waived his right to a revocation hearing and stipulated to the facts contained in the probation violation warrant. The court found, based upon agreement of the parties, that the Defendant materially violated the conditions of his probation. The court revoked the Defendant's probation, ordered him to serve one year in confinement, and returned him to supervised probation. The court, likewise, ordered the Defendant to complete an alcohol and drug assessment and to comply with all recommendations.

On March 4, 2024, a sixth probation violation warrant was issued based upon allegations that on February 6, 2024, the Defendant failed to report to his probation officer and to sign a sanction for a failed drug screen; failed to report to the probation office to complete the alcohol and drug assessment on February 13, 2024; failed to report to the probation office to complete the risk and needs assessment on February 13, 2024; failed to report to his probation officer on February 27, 2024; tested positive for cocaine on February 1, 2024; failed to pay probation supervision fees, which totaled $1,447.50; failed to pay court costs, which totaled $8,757.50; and failed to complete the alcohol and drug assessment as ordered by the trial court on August 7, 2023. These allegations are the subject of the present appeal.

At the August 26, 2024 probation revocation hearing, probation officer Ashley Bickel testified that she began supervising the Defendant's probation on May 1, 2023, and that her file contained documentation related to the Defendant's supervision before she became his probation officer. She said that she met with the Defendant about one and one-half weeks after the Defendant was released from confinement for the one year he served for a previous violation. She said that the Defendant tested positive for cocaine and that he later missed the appointment for the risk and needs assessment and missed the meeting with the behavioral health specialist.

Ms. Bickel identified a drug screen report, which was received as an exhibit. The report reflects that on February 1, 2024, the Defendant tested positive for cocaine. Ms. Bickel testified that she and the Defendant discussed the drug screen results and that the Defendant admitted using cocaine. She said they discussed "getting him back into the office for his assessments." She said that they discussed his cocaine use five to six times and that the Defendant "did not seem to take it seriously." Ms. Bickel said the Defendant used cocaine continuously.

Ms. Bickel testified that the Defendant had seven previous probation violations. She noted that the Defendant would have had additional violations but that probation violation warrants were not filed due to the Covid-19 pandemic. She said that during the pandemic, the Defendant tested positive for methamphetamine on November 19, 2020, and for cocaine and methamphetamine on June 14, 2021. She said that the probation office "dealt with that on a sanction basis" because of the pandemic. When asked about the opportunities afforded to the Defendant for drug and alcohol rehabilitation, she said that the Defendant met with the behavioral health specialist on multiple occasions. She said the behavioral health specialist determined the needs and services appropriate for a probationer. She said that during the Defendant's last meeting with the behavioral health specialist, he was referred to the "peer specialist for extra community support." Ms. Bickel noted that the Defendant was "supposed to be meeting with [the peer specialist], as well as doing NA meetings and obtaining a sponsor." Ms. Bickel said that the Defendant did not provide proof of attending Narcotics Anonymous and that she was unsure if the Defendant met with the peer specialist. Ms. Bickel recalled that she and the peer specialist had difficulty contacting the Defendant.

Ms. Bickel testified that when the Defendant failed the drug screen on February 1, 2024, she scheduled a home visit for February 5, a probation office visit for February 6, the risk and needs assessment for February 13, and the alcohol and drug assessment for February 13. She said that she provided the Defendant with a card reflecting all of the appointment dates but that the Defendant did not go to any of the appointments. Ms. Bickel said that she went to the Defendant's home on February 5 and spoke to a woman, who stated that the Defendant "had just gone out for a bit." Ms. Bickel said that she had no contact with the Defendant after February 1 until his arrest for the present probation violation.

Ms. Bickel testified that the Defendant had received inpatient treatment twice. She said that the Defendant completed a twenty-eight-day inpatient treatment program in September 2000 and that he completed another inpatient treatment program just before she became his probation officer. She said, though, the Defendant had never expressed a need for drug treatment. She said that any time she and the Defendant discussed his drug use,

he said that he could "quit whenever" he wanted and that he did not believe he had an issue. She concluded that the Defendant was not serious about treatment.

On cross-examination, Ms. Bickel testified that the Defendant never denied using drugs and that he reported to the probation office until he failed the drug screen. She said that she filed the present probation violation report because she was "out of options," although she had been "willing to work" with the Defendant to obtain drug treatment.

The Defendant testified that he admitted using drugs to his probation officer when he failed the drug screen on February 1, 2024. He admitted, as well, that he did not report to any of the appointments Ms. Bickel scheduled for him in connection with drug treatment. When asked to explain himself, the Defendant said, "I just didn't want to accept it at the time, just more or less where I was at." He said, though, that since February, he had "pretty much gotten a hold of [himself] and [was] doing a lot better." He said he had been sober for six months, was attending "Colorado Tech," and was working occasionally. He said that he stayed with a preacher, who helped him financially. He said he needed substance use treatment and admitted he had a problem. He said he did not cooperate with Ms. Bickel's treatment plans because "pride got in the way." He said he would accept treatment.

The Defendant testified that he had served approximately two and one-half years in confinement due to his previous probation revocations. He said that he was ready to face his drug problems and could "be a successful citizen now."

On cross-examination, the Defendant testified that he began serving his sentence on probation in January 2020 and that he violated his probation seven times, which included two sanctions, rather than revocations, due to the Covid-19 pandemic. He said that he served thirty days in confinement for the first violation and that he participated in an inpatient treatment program in 2020. He acknowledged that he had failed drug screens, leading to two of the prior revocation proceedings, and that he received a furlough to another inpatient treatment program. He agreed that after his release from the treatment program, he violated the conditions of his probation by failing a drug screen. He admitted that he had received numerous opportunities to get alcohol and drug treatment.

The Defendant testified that after his February 1, 2024 failed drug screen but before his arrest on August 2, 2024, he attempted to contact his probation officer. He said, though, that he did not go to the probation office. He agreed that he had previous felony convictions for theft and two counts of delivery of cocaine.

- 5 -

The trial court determined that the Defendant "engaged in a material violation" of the conditions of his probation. The court found that the Defendant failed to report for the alcohol and drug assessment and for the risk and needs assessment. The court, likewise, found that the Defendant tested positive for cocaine on February 1, 2024. The court, as a result, revoked the Defendant's probation.

In considering the appropriate consequence, the trial court found that the Defendant had violated the conditions of his probation numerous times. The court noted that although Ms. Bickel testified that the Defendant had seven previous probation violations, the court file showed five previous probation violations. The court stated that regardless of whether the Defendant had five or seven previous probation violations, the Defendant had violated the conditions of his probation "numerous" times. The court found that the testimony showed the Defendant would have been found to have violated the conditions of probation twice more on November 19, 2020, and June 14, 2021, but for the Covid-19 pandemic. The court found that the Defendant did not follow through on any treatment recommendations and that the Defendant had not reported to his probation officer since February 1, 2024.

The trial court considered the nature and seriousness of the violation and the Defendant's probation history. The court noted the seriousness of failing to report to his probation officer and failing a drug screen. The court found that the Defendant's supervision history was very poor, based upon the numerous previous violations. The court considered the Defendant's "amenability to future probation," which included the Defendant's acceptance of responsibility for the violation. The court found that although the Defendant had expressed "some acceptance today," the Defendant had expressed "very little acceptance of responsibility" in the history of failed probation attempts. The court found that the Defendant had not made any statement of genuine remorse. The court determined, "There's no reason to conclude that he will comply with the orders of the Court to ensure effective rehabilitation because he's never done that before despite numerous opportunities." The court found that the Defendant had acted intentionally and that he was a danger to himself. As a result, the court ordered the Defendant to serve the remainder of his sentence in confinement. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. He argues that inconsistencies in the evidence related to the number of times he failed to report to Ms. Bickel and to the number of previous probation violations prevented the court from determining revocation was warranted and that the court failed to consider whether ordering him to serve his sentence would serve the ends of justice, based upon the Defendant's "improved life situation." The State responds that the court did not abuse its

discretion by ordering the Defendant to serve the remainder of his sentence.  We agree with the State.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record."  *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022).  An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred."  *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).  A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'"  *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence.  *Dagnan*, 641 S.W.3d at 757.  A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal.  *Id*. at 757-58.

After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered.  T.C.A. §§ 40-35-308(a), (c) (Supp. 2024), -310 (Supp. 2024).  When the court orders a sentence into execution, the court "may give credit against the original judgment by the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation or a portion of that amount of time."  *Id*. § 40-35-310; *see id*. § 40-35-311(e)(2) (Supp. 2024).  When determining whether to "award credit for time successfully spent on probation" before revocation, a court "may consider 'the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character.'"  *State v. Williams*, 673 S.W.3d 255, 260 (Tenn. Crim. App. 2023) (quoting *Dagnan*, 641 S.W.3d at 759 n.5).  A court's determination whether "to award or deny credit for time served on probation" is reviewed for an abuse of discretion.  *Williams*, 673 S.W.3d at 259.  "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge."  *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the Defendant pleaded guilty on January 13, 2020, and he was afforded the opportunity to complete an alcohol and drug assessment, which the record reflects was not completed.  On February 1, 2024, the Defendant tested positive for cocaine, and the Defendant admitted using cocaine to his probation officer and during his probation revocation hearing testimony.  Although probation violation warrants were not filed due to the Covid-19 pandemic, the Defendant, likewise, tested positive for methamphetamine on November 19, 2020, and for cocaine and methamphetamine on June 14, 2021.  After the February 1, 2024 failed drug screen, the Defendant failed to report to the probation office on February 6; failed to report for the risk and needs assessment on February 13; and failed to report for the alcohol and drug assessment on February 13.  The Defendant last reported to his probation officer on February 1, 2024.  The record supports the trial court's determination that the Defendant violated the conditions of his probation by failing a drug screen and by failing to report to the probation office for the risk and needs assessment and for the alcohol and drug assessment.

The trial court, likewise, did not abuse its discretion by ordering the Defendant to serve the remainder of his eight-year sentence in confinement.  In considering the appropriate consequence for the violation, the court considered the Defendant's probation supervision history, which reflects five previous probation revocations.[2]  The Defendant did not dispute the allegations contained in the five previous revocation proceedings, which included, in relevant part, the Defendant's failure to report to the probation office, methamphetamine and cocaine use, and failure to comply with a referral to the peer recovery program.  After serving time in confinement for the previous violations, the Defendant continued to use drugs and failed to report to his probation officer.  Although not the subject of a revocation proceeding, the Defendant tested positive for cocaine and methamphetamine on June 14, 2021, and for methamphetamine on November 19, 2020.  The failed drug screens were addressed by sanctions due to the Covid-19 pandemic.  Additionally, the court considered the seriousness of the present violation and found that failure to report to a probation officer and failing a drug screen were serious violations.  The Defendant was afforded multiple opportunities to comply with the terms of his probation, and the record supports the trial court's determination that the Defendant would not comply with the conditions of his release.  The Defendant is not entitled to relief.

---

[2] Although Ms. Bickel testified that the Defendant had seven previous probation revocations, the record reflects five previous revocation proceedings, along with two sanctions for drug use during the Covid-19 pandemic.  The trial court noted the discrepancy at the revocation hearing and concluded that five previous revocations reflected a poor supervision history.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

s/ **Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE