IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 22, 2025 Session

## STATE OF TENNESSEE v. ANDREW STEVEN BRYANT

**Appeal from the Circuit Court for Jefferson County**
**No. 15189    Carter S. Moore, Judge**

---

### No. E2024-01943-CCA-R3-CD

---

The Defendant, Andrew Steven Bryant, appeals from the Jefferson County Circuit Court's probation revocation of his four-year sentence for reckless homicide. On appeal, the Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. We reverse the judgment of the trial court and remand this case for the trial court to make findings regarding the Defendant's probation violation and the appropriate consequence for the violation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and STEVEN W. SWORD, JJ., joined.

Rebecca Lee, District Public Defender; Cashauna C. Lattimore, Assistant Public Defender, for the appellant, Andrew Steven Bryant.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; James Dunn, District Attorney General; and Kelsi R. Pratt-Mower, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On August 16, 2021, the Jefferson County Grand Jury indicted the Defendant for one count of second degree murder by the unlawful distribution of fentanyl. The Defendant pleaded guilty to reckless homicide and received a four-year sentence, suspended to supervised probation on house arrest.

At the guilty plea hearing, the State recited that on March 14, 2021, the Fourth Judicial District Drug Task Force responded to an overdose death and determined that the Defendant had taken the victim's girlfriend to purchase methamphetamine and heroin and that the victim used those substances before his death. An autopsy confirmed that the victim's death was due to fentanyl and methamphetamine toxicity.

At the sentencing hearing, the Defendant testified that he drove the victim's girlfriend to purchase heroin and that, subsequently, he assisted the Tennessee Bureau of Investigation in identifying drug-related activity. The Defendant said that he suffered from a bleeding disorder which required daily administration of a clotting agent through a permanent port in his chest. The presentence investigation report stated that the Defendant never completed high school, that he lived with his fiancée, and that he received disability benefits due to his poor health. The trial court ordered the Defendant to serve the balance of his four-year sentence on house arrest, only leaving his house to take his fiancée to work, attend his medical appointments, and report to the probation office.

On April 5, 2024, the trial court issued a first probation violation warrant alleging that, on January 25, the Defendant tested positive for THC, fentanyl, and heroin and that, on March 5, the Defendant tested positive for fentanyl. The affidavit in support of the warrant stated that "[p]ursuant to TCA 40-35-311(d), at least one of the violations below meets the definition of a zero-tolerance violation as defined by the Department of Correction Community Supervision Sanction Matrix; therefore, it is not considered a 'technical' violation." The warrant was executed on April 5, and the Defendant was released on a recognizance bond.

On April 12, 2024, the trial court issued a second probation violation warrant alleging that, on April 5, the Defendant tested positive for fentanyl. The affidavit in support of the warrant included the same zero tolerance violation attestation as the April 5 warrant. The second warrant was executed on April 13, and the Defendant was released on a recognizance bond.

On June 10, 2024, the second probation violation warrant was amended to include that, on June 3, the Defendant tested positive for fentanyl. The warrant was executed, and the Defendant was released on a recognizance bond on July 30. On October 11, the trial court issued a third probation violation warrant alleging that the Defendant failed to comply with a condition of his house arrest by failing to charge his GPS monitor's battery on February 15, June 20, and September 17. The affidavit in support of the October 11 warrant included the same zero tolerance violation attestation as the April 5 and April 12 warrants. The third warrant was executed on November 15, and the court denied the Defendant's motion to be released on a recognizance bond.

At a December 10, 2024 probation violation hearing, defense counsel stated the Defendant "submit[ted] to the allegation of violation of probation" and agreed that he failed several drug screens and failed to charge his GPS monitor. Probation officer Holly Grim testified that she had supervised the Defendant since November 2023, and that the Defendant had "failed several drug screens," the last being on July 9, 2024. Ms. Grim stated that the Defendant was not a candidate for a residential substance use treatment center due to his bleeding disorder, that he was referred to behavioral health specialists, and that he briefly participated in an intensive outpatient program. Ms. Grim confirmed that the Defendant provided her with hospital discharge documents and photographs of his hospital "bracelets" to document his hospitalizations.

Detective John Holland testified that in November 2024, he arrested the Defendant pursuant to an outstanding violation of probation warrant and that the Defendant's backpack had a "clear plastic baggie with a dark colored residue" which field-tested as methamphetamine. Detective Holland said he did not submit the substance to the TBI for confirmation testing, and he had not charged the Defendant.

Stephen Lawrence, a "pharmacy representative," testified that he had worked with the Defendant for twenty-five years. Mr. Lawrence said the Defendant had a life-threatening, hereditary bleeding disorder that required injecting a clotting medication into the Defendant's port once or twice daily, flushing out the port with saline, and injecting heparin to prevent a clot from forming in the port. Mr. Lawrence opined that long-term incarceration would pose a health risk to the Defendant because of the Defendant's daily medication needs.

The Defendant testified that he had a substance abuse problem for which he had been unable to receive treatment as a result of his medical condition. He admitted that he last used narcotics in July 2024 but had not failed a drug screen since then. The Defendant said that he had "been in the hospital more than [he'd] been at home" and that he always let his probation officer and the GPS monitoring company know when he was hospitalized. The Defendant confirmed that he had been hospitalized on the dates on which his GPS monitor's battery died.

At the close of proof, the State took the position that the Defendant's continued drug use put him and the community at risk and requested that the court order the Defendant to serve his sentence. Defense counsel argued that revocation was not an available remedy for the Defendant's one instance of technical violations. *See* T.C.A. § 40-35-311(d)(2) (Supp. 2024). The trial court accepted the Defendant's guilty plea to the probation violations and concluded that the Defendant should serve the remainder of his sentence in confinement because the Defendant failed to "do what [he's] supposed to do on probation between being discharged from [an intensive outpatient program] and multiple drug test

failures . . . all within one year after getting a reduced charge on a drug-related homicide." This appeal followed.

In this appeal, the Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. The Defendant alleges the court's probation revocation violated Section 40-35-311(d)(2) of the Tennessee Criminal Sentencing Reform Act of 1989 which prevents a court from revoking a defendant's probation based on only "one instance of technical violation or violations." *See id.* § 40-35-101 *et seq.* (2019 and Supp. 2024). According to the Defendant, his failed drug screens and failure to keep his GPS monitor's battery charged constitute only one violating instance. The Defendant also alleges that Tennessee Code Annotated section 40-35-311(g) precluded the court from ordering him to serve the remainder of his sentence in confinement because he had not previously had his probation revoked. The State counters that each failed drug screen and each time the Defendant failed to keep his GPS monitor's battery charged constituted a new and distinct statutory "instance" of a violation. The State argues that the trial court did not abuse its discretion by revoking the Defendant's probation for multiple probation violations and ordering him to serve his sentence.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan,* 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp,* 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer,* 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear,* 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer,* 45 S.W.3d at 555 (quoting *State v. Moore,* 6 S.W.3d 235, 242 (Tenn. 1999)).

If the trial court failed to memorialize its reasons for the revocation decision on the record, the appellate court may either conduct a de novo review, provided the record is developed sufficiently for such review, or it may remand the case to the trial court with instructions to make appropriate findings. *Dagnan,* 641 S.W.3d at 759. When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Id.* at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id.* at 757-58.

Tennessee Code Annotated section 40-35-311 classifies violations into "technical" and "non-technical" violations. A technical violation "means an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation . . . absconding, or contacting the defendant's victim in violation of a condition of probation." *Id.* § 40-35-311(g) (Supp. 2024). After revoking a defendant's probation on a non-technical violation, the court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. *Id.* §§ 40-35-308(a), (c) (Supp. 2024), -310 (Supp. 2024), -311(e)(2). The Tennessee Department of Correction Community Supervision Sanction Matrix defines a zero tolerance violation as including a defendant's noncompliance with sanctions, a positive drug test for methamphetamine, refusal to submit to a drug screen and refusal to submit to a search, possession of a firearm, and knowingly possessing methamphetamine, a Class A misdemeanor. *See id.* §§ 39-17-418 (Supp. 2023) (subsequently amended) (possession of controlled substance); 40-35-311(g) (a non-technical probation violation includes a new Class A misdemeanor).

"When presented with a case in which the trial court failed to place its reasoning for a revocation decision on the record, the appellate court may conduct a de novo review if the record is sufficiently developed . . . or remand the case to the trial court to make such findings." *Dagnan*, 641 S.W.3d at 759 (citation omitted). Here, the record reflects that the affidavits in support of the warrants stated that the Defendant was guilty of zero tolerance violations, which the Sentencing Reform Act classifies as non-technical violations and for which the court may fully revoke the Defendant's probation. However, the court did not address on the record whether the Defendant's guilty plea incorporated the fact that some of the violations were zero tolerance violations, and the court failed to make any findings regarding whether the Defendant had committed zero tolerance violations. A judge's responsibilities under *Dagnan* include the obligation to state on the record the basis for a probation revocation and whether the Defendant was alleged to have committed technical or non-technical violations, such as zero tolerance violations, and to discuss the effect of those violations on the appropriate consequence. *Id.* Here, the court revoked the Defendant's probation but failed to state on the record how its decision reflected the Defendant's alleged zero tolerance violations. Although "[i]t is not necessary for the trial court's findings to be particularly lengthy or detailed," they must be "sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* Accordingly, the record in this case is inadequate to facilitate a meaningful appellate review of the appropriate consequence. We reverse the judgment of the trial court and remand this case for the court to make sufficient findings regarding the Defendant's probation violation and the appropriate consequence for the violation. *Id.* at 758-59.

In consideration of the foregoing and the record as a whole, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.


s/Robert H. Montgomery, Jr.
ROBERT H. MONTGOMERY, JR., JUDGE